UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DALE SUNDBY,

Plaintiff,

v.

MARQUEE FUNDING GROUP, INC., *et al.*,

Defendants.

Case No.: 3:19-cv-00390-GPC-AHG

**ORDER DENYING INVESTOR DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER AND PLAINTIFF'S MOTION TO STRIKE REPLY**

**[ECF Nos. 97, 115]**

## I. BACKGROUND

This matter comes before the Court on the Motion to Modify Scheduling Order to Allow Defendants to File an Amended Answer Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, filed by the Investor Defendants[1] on March 11, 2020. ECF No. 97. Plaintiff filed a Response in opposition to the motion on March 30, 2020 (ECF No.

[1] The Investor Defendants include Salomon Benzimra, Trustee, Stanley Kesselman, Trustee, Jeffrey Myers, Kathleen Myers, Andres Salsido, Trustee, Benning Management Group 401(k) Profit Sharing Plan, Christopher Myers, Vickie McCarty, Delores Thompson, Kimberly Gill Rabinoff, Steven Cobin, Trustee, Susan Cobin, Trustee, Equity Trust Company, Custodian FBO Steven M. Cobin Traditional IRA, Todd B. Cobin, Trustee, Barbara A. Cobin, Trustee, and Fasack Investments, LLC.

107), and the Investor Defendants filed a Reply on April 6, 2020 (ECF No. 112). Plaintiff also filed a Motion to Strike the Reply on April 6, 2020 (ECF No. 115).

## II. LEGAL STANDARD

Under Fed. R. Civ. P 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). The good cause standard focuses on the diligence of the party seeking to amend the scheduling order and the reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, advisory committee's notes to 1983 amendment. Therefore, "a party demonstrates good cause by acting diligently to meet the original deadlines set forth by the court." *Merck v. Swift Transportation Co.*, No. CV-16-01103-PHX-ROS, 2018 WL 4492362, at *2 (D. Ariz. Sept. 19, 2018).

## III. DISCUSSION

Here, the Investor Defendants seek to amend the Scheduling Order to extend the deadline governing motions to amend pleadings, which the Court set as December 30, 2019 in the Scheduling Order issued on November 26, 2019. ECF No. 70 at 2. The Investor Defendants request that the Court reset the deadline to April 30, 2020, so that they may file a motion to amend their Answer (ECF No. 49) for the District Judge's consideration. Specifically, the Investor Defendants wish to amend their Answer to Plaintiff's Amended Complaint to add the affirmative defenses of Equitable Subrogation and Equitable Lien. *See* ECF No. 97 at 5. Investor Defendants contend that they could not have moved to amend the Answer by the deadline of December 30, 2019, because they only recently determined in February 2020 that these affirmative defenses apply in response to Plaintiff's claims. *Id.* at 5, 6, 8.

Although the undersigned expresses no opinion on the merits of the proposed

affirmative defenses of Equitable Subrogation and Equitable Lien, a brief merits discussion is necessary to give context to Investor Defendants' argument that they did not have sufficient information until February 2020 to know that these defenses may apply. Plaintiff's claims in this action arise from two separate refinance loans obtained in 2016 and 2017, which Plaintiff used to pay off a prior loan encumbering Plaintiff's real property. Plaintiff obtained the 2017 loan in the amount of $3,160,000 from the Investor Defendants. Among other relief sought in the Amended Complaint, Plaintiff seeks a judgment setting aside the Investor Defendants' Deed of Trust for the 2017 loan as a lien against the property.

Pertinent to the Investor Defendants' newly proposed affirmative defenses, Plaintiff also entered into a third refinance loan in 2015 in the amount of $2,000,000, which was used to pay off Bank of America's $1,500,000 deed of trust encumbering Plaintiff's property. Some of the Investor Defendants were also lenders involved in paying the 2015 refinance loan.

The Investor Defendants argue that the fact that some of their funds were used to pay the 2015 refinance loan supports the affirmative defenses of equitable subrogation and equitable lien. Specifically, in the motion at hand, Investor Defendants first cite to California law regarding the doctrine of equitable subrogation, which grants a lender the same first and senior priority lien position held by a paid-off lender in a loan refinance transaction. *See* ECF No. 97 at 7 (citing to *Caito v. United California Bank*, 20 Cal. 3d 694, 704 (Cal. 1978)) ("One who claims to be equitably subrogated to the rights of a secured creditor must satisfy certain prerequisites. These are: (1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others.") (quotations and citation omitted). Investor Defendants further argue that the doctrine of equitable lien applies, because "[a]n equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that

property" and "courts will construe the existence of equitable liens where the parties have erroneously created a defective mortgage." ECF No. 97 at 8 (quoting, respectively, *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 453 (Cal. Ct. App. 1997) and *Grappo v. Coventry Fin. Corp.*, 235 Cal. App. 3d 496, 509 (Cal. Ct. App. 1991)).

Based on these doctrines, the Investor Defendants aver they are "entitled at a minimum to the same priority lien position held by the Bank of America" because some of their funds were used to pay off the Bank of America loan in 2015, and that their additional payment of the 2016 refinance loan, used to pay off the 2015 refinance loan, also forms the basis for a further equitable lien. ECF No. 97 at 8. The Investor Defendants rely on this argument to support the contention that they have shown good cause to modify the Scheduling Order. *Id.* at 9. However, the Investor Defendants' legal arguments have no bearing on whether they have shown good cause to modify the Scheduling Order. As explained above, the key inquiry under Rule 16(b)(4) is whether the party seeking to amend the Scheduling Order has shown the requisite diligence. *See Johnson*, 975 F.2d at 609 ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.") (citation omitted).

To be clear, the Investor Defendants do also touch on the diligence inquiry in their motion in addition to arguing the merits of their proposed defenses. In particular, the Investor Defendants contend that "[b]ased on further investigation of the law and facts in this matter, including reviewing the Plaintiff's discovery responses served on February 24, 2020, Investor Defendants have *recently determined* that the affirmative defenses of Equitable Subrogation and Equitable Lien apply[.]" ECF No. 97 at 2 (emphasis added). *See also id.* at 6 (reiterating the same assertion that the Investor Defendants determined in February 2020 that the affirmative defenses may apply).

As for the specific facts that the Investor Defendants did not learn until February 2020, the motion states that "counsel for Investor Defendants [Troy Slome] was not fully aware of the facts in regard to this third [2015] refinance loan with the Plaintiff until February 2020, including the fact that the sum of $1,500,000 was paid to Bank of

America in connection with the 2015 refinance loan." *Id.* at 8. Mr. Slome's declaration similarly states that Plaintiff's February 24, 2020 responses to the Investor Defendants' Interrogatories (Set 1) and Demand for Production and Inspection of Documents (Set 1) "shed additional light on the Plaintiff's claims in the First Amended Complaint." ECF No. 97-1, Slome Decl. ¶ 2. Mr. Slome does not expound on what "additional light" these documents shed, however. Indeed, the specific information most pertinent to the proposed defenses appears to have been gleaned from conversations with counsel for Marquee, as described in the following paragraph of the declaration:

> In February 2020, I was also able to confer with counsel for defendant Marquee [] in regard to the issue of a 2015 loan provided by some of the Investor Defendants to the Plaintiff in 2015. Specifically, I was also able to confirm that the refinance loan provided to the Plaintiff in 2015 included the pay-off of [a] $1,500,000 loan and deed of trust in favor of Bank of America. This 2015 refinance loan from some of the Investor Defendants was then paid-off by the Investor Defendants' 2016 refinance loan at issue in the Plaintiff's First Amended Complaint.

*Id.* ¶ 3.

Plaintiff opposes the Investor Defendants' request on the basis that they have failed to show diligence. *See* ECF No. 107 at 2-4. In particular, Plaintiff asserts that counsel for the Investor Defendants has known of the underlying facts that purportedly support the proposed new defenses since long before February 2020, because Jeffrey Myers, one of the Investor Defendants, was the lead investor in the 2016 and 2017 loans and was also the controlling investor in the 2015 loan. *Id.* at 4. Plaintiff further asserts that counsel for the Investor Defendants should have known about the relevant facts underlying the defenses because the other Defendant, Marquee Funding Group, Inc. ("Marquee"), originated the 2015 loan, and Marquee's counsel and the Investor Defendants' counsel have had a joint defense relationship since the outset of the litigation. *Id.* The Investor Defendants do not dispute either of these facts in the Reply, which does not address the diligence question at all. Instead, the arguments in the Reply include: (1) that the proposed defenses of equitable lien and equitable subrogation are meritorious; (2) that the proposed defenses are

affirmative defenses, and not compulsory counterclaims as Plaintiff argues in his opposition; and (3) that Plaintiff will not be prejudiced by the extension of the scheduling order, because the Investor Defendants have agreed to allow Plaintiff to propound discovery as to the two new affirmative defenses, and the pretrial motions deadline is not until June 30, 2020. *See generally* ECF No. 112.

Upon consideration, the Court finds that the Investor Defendants have not met the diligence standard to amend the Scheduling Order. The Investor Defendants and their counsel do not sufficiently explain in their motion—or address at all in their Reply—what information in particular was learned for the first time in February 2020 upon review of Plaintiff's discovery responses that was previously unknown to the Investor Defendants, or, more importantly, why the information that was *already* known to Investor Defendants was insufficient to determine the applicability of the proposed equitable defenses prior to the pleading amendment deadline of December 30, 2019. The very basis of the proposed affirmative defenses is that the Investor Defendants' funds were used to pay off the 2015 Bank of America loan. Surely, then, the Investor Defendants who contributed to the 2015 loan would have known these facts from the beginning of this litigation, and their counsel would have also known about these facts in the exercise of due diligence. *See Quezada v. City of Los Angeles*, No. 21507382ODWPJWX, 2018 WL 4378661, at *3 (C.D. Cal. Sept. 13, 2018) (finding the Rule 16(b)(4) diligence standard was not met to justify permitting amendment of the complaint to include a new fact known to the plaintiffs, because "[p]resumably, counsel conducted due diligence, including communicating with their clients and ascertaining the circumstances of the [underlying incident], when they appeared in the action more than a year ago, which means they would have learned what Plaintiffs knew at least by July 2017."). *See also Merck*, 2018 WL 4492362, at *3 (finding the plaintiff had not shown the requisite diligence to amend the complaint because at the time the suit was filed, "Plaintiff knew the relevant facts underlying her claim," and "Plaintiff's counsel presumptively knew the relevant facts underlying her client's claim when drafting the complaint and submitting it to the court."). Similarly, here, the Investor Defendants

whose funds were used in the 2015 refinance loan transaction presumably knew about that transaction when the Answer was filed, and their counsel presumptively knew those facts as well. This conclusion is further bolstered by the fact that Mr. Slome's declaration only specifies information that he "confirm[ed]" by conferring with counsel for Marquee, with whom Mr. Slome has had a joint defense relationship since long before the pleading amendment deadline passed at the end of December. The information that was newly learned from Plaintiff's discovery responses is not identified.

Therefore, the Investor Defendants have failed to show that they acted diligently to comply with the existing deadline to add the proposed affirmative defenses to their Answer. Whether those defenses would ultimately win the day if allowed to proceed is not a question before the Court. If the moving party fails to show diligence, the inquiry must end. *Johnson*, 975 F.2d at 609; *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1097 (9th Cir. 2002). Nor does lack of prejudice to Plaintiff matter except as only a secondary consideration to the diligence inquiry. *See Cruz v. City of Anaheim*, No. CV1003997MMMJEMX, 2011 WL 13214312, at *2 (C.D. Cal. Dec. 19, 2011) (quoting *Johnson*, 975 F.2d at 609) ("Because diligence is the focus of the inquiry, prejudice to the party opposing the modification is not a prerequisite; it does, however, 'supply additional reasons to deny [the] motion.'"). Consequently, the Court must **DENY** the Investor Defendants' Motion.

Finally, although Plaintiff's opposition brief also addresses the legal merits of the proposed affirmative defenses, Plaintiff moved to strike the Investor Defendants' Reply precisely because it did not address the diligence question and instead presented substantial legal arguments on the merits. *See* ECF No. 115. In the alternative, Plaintiff sought leave to file a surreply to address the merits issues argued in the Reply, since the Court's Order Setting Briefing Schedule instructed Plaintiff that "any opposition should be limited to the Investor Defendants' request to extend the pleadings amendment deadline, since the merits issue of whether to grant leave to amend the answer as proposed is not yet before the Court." ECF No. 99. Because the Court denies the motion to amend based on failure to

show diligence, Plaintiff's Motion to Strike (ECF No. 115) based on the Investor Defendants' failure to argue the relevant standard is also **DENIED as moot**.

## IV. CONCLUSION

For the reasons set forth above, the Investor Defendants' Motion to Modify Scheduling Order to Allow Defendants to File an Amended Answer Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure (ECF No. 97) is **DENIED**.

Additionally, Plaintiff's Motion to Strike (ECF No. 115) is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: April 24, 2020

Honorable Allison H. Goddard
United States Magistrate Judge