UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE SUNDBY,<br><br>          Plaintiff,<br><br>v.<br><br>MARQUEE FUNDING GROUP, INC., *et al.*,<br><br>          Defendants. | Case No.: 3:19-cv-00390-GPC-AHG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>**[ECF No. 145]** |

This matter comes before the Court on Plaintiff's Motion for Protective Order (ECF No. 145), asking the Court to order redactions of certain deposition exhibits prior to the deposition of Plaintiff's wife, non-party Edith Sundby.

## I.  BACKGROUND

As previously recounted in prior orders, including the Court's Order to Show Cause (ECF No. 132 at 1-3), following a protracted dispute regarding the depositions of Plaintiff and his wife, non-party Edith Sundby, Plaintiff and counsel for the Investor Defendants[1] in this action ultimately reached several agreements on the record, which seemed to resolve all remaining disputes.

Edith Sundby is a co-trustee of the trust whose assets encompass the real property that is the subject of the 2016 and 2017 loans underlying this litigation. ECF No. 92. *See also* ECF No. 13 ¶¶ 26-129; ECF No. 66. The agreements reached and placed on the record regarding Mr. and Mrs. Sundby's depositions included, in pertinent part, the following: through Plaintiff, Edith Sundby agreed to accept service by email at her personal email address of a Rule 45 Subpoena to Testify at Deposition in a Civil Action set for May 29, 2020, and to e-mail copies of any responsive documents requested in the Subpoena to the e-mail address for Investor Defendants' counsel by May 22, 2020. Plaintiff also agreed to accept service by email of the Notice of Deposition and the Notice of Subpoena to Testify at a Deposition in a Civil Action To Be Served on Edith Sundby. Both Plaintiff and Edith Sundby agreed to waive any 30-day notice requirement to produce responsive documents to the Subpoena and Notice of Deposition. Finally, Plaintiff agreed to appear for his own deposition on May 28, 2020, and to e-mail copies of any responsive documents

---

[1] The Investor Defendants include Salomon Benzimra, Trustee, Stanley Kesselman, Trustee, Jeffrey Myers, Kathleen Myers, Andres Salsido, Trustee, Benning Management Group 401(k) Profit Sharing Plan, Christopher Myers, Vickie McCarty, Delores Thompson, Kimberly Gill Rabinoff, Steven Cobin, Trustee, Susan Cobin, Trustee, Equity Trust Company, Custodian FBO Steven M. Cobin Traditional IRA, Todd B. Cobin, Trustee, Barbara A. Cobin, Trustee, and Fasack Investments, LLC.

requested in the Notice of Subpoena to Edith Sundby (not previously produced by Plaintiff to the Investor Defendants in this matter) to Investor Defendants' counsel by May 21, 2020. ECF No. 133, Hr'g Tr. 4:14-6:1.

Plaintiff's deposition proceeded as scheduled on May 28, 2020. During the deposition, a dispute arose regarding certain documents marked as Exhibits 17, 32, 33, and 118 to the deposition. Exhibits 32 and 33 were produced by Plaintiff in response to discovery requests. Exhibit 118 was an attachment to Exhibit 17, and both documents were produced during discovery by Defendant Marquee Funding Group, Inc. ("Marquee"). *See* ECF No. 151-1, Slome Decl. ¶¶ 2-3. Exhibits 32 and 33 are email communications from May 2018 between Plaintiff and R.J. Solovy, a Vice President and broker at Marquee, regarding a potential extension of the 2017 loan at issue in this litigation. Exhibit 17 also reflects an email communication between Plaintiff and Mr. Solovy approximately one year earlier, on April 29, 2017, which concerns "Updated Loan Paperwork" and Plaintiff's ability to meet his payment obligations. Attached to Exhibit 17 is Exhibit 118, an April 25, 2017 letter from Plaintiff to a Chairman and CEO of Morgan Stanley regarding an exclusive licensing opportunity. *See* ECF No. 139, Exs. 4-7.

During his deposition, Plaintiff contended all four of these documents were confidential, and requested that certain "sensitive words" be redacted from the documents prior to Edith Sundby's deposition, based on Plaintiff's asserted "right to protect [his] personal privacy." *See* ECF No. 154 at 5 (quoting Sundby Dep. 132:8-21); ECF No. 145 at 2. Plaintiff argues these sensitive words "have no possible relevance to the case." ECF No. 139 at 2. Plaintiff and defense counsel did not reach an agreement during his deposition regarding Plaintiff's proposed redactions of the documents prior to his wife's deposition. Plaintiff stated his intention to move for a protective order on the issue. *Id.*; *see also* ECF No. 155, Ex. 4. (Sundby Dep. 339:10-340:24).

Edith Sundby's deposition was scheduled for the next day, May 29, 2020, at 10:00 a.m. Plaintiff did not move for a protective order or otherwise contact the Court to address the dispute. Instead, Plaintiff emailed Troy Slome, counsel for the Investor

Defendants, Lewis Landau, counsel for Defendant Marquee, and Russel Myrick, counsel for Edith Sundby, at 9:13 a.m. on May 29, 2020, with the subject line: "Motion for Protective Order – Suspension of Edith Littlefield Sundby's Deposition Pursuant to FRCP 30(d)(3)(A)." ECF No. 139, Ex. 8. In the email, Plaintiff stated that, pursuant to Rule 30(d)(3)(A) of the Federal Rules of Civil Procedure, he was "hereby demanding the witness deposition currently set for 10:00 a.m. today be 'suspended for the time necessary to obtain an order'" and further stated his intention to move for a protective order to limit the scope of Edith Sundby's deposition "promptly." *Id.* Mr. Myrick responded to Plaintiff's email three minutes later at 9:16 a.m., asking to be advised "when the Court has ruled on the motion so that we may re-calendar the deposition." ECF No. 139, Ex. 12.

Mr. Slome responded to the email at 9:19 a.m., asking Plaintiff to confirm whether he was available to speak to the Court to reach a resolution of the issue before the 10:00 a.m. deposition, and noting that the Court requires parties to appear for a telephonic discovery conference before motion practice on a discovery dispute is permitted. ECF No. 139, Ex. 13. In that email, Mr. Slome also informed Plaintiff that he "will not be introducing Exhibits 17, 32, and 33 at the deposition of Edith Sundby today" but reserved all rights to use them in the remainder of the case and at trial. *Id.* Mr. Slome then contacted the Court to intervene, and the Court set an immediate hearing on the issue. However, as recounted in the Court's Order to Show Cause, Plaintiff, Edith Sundby, and Mr. Myrick all failed to appear for the hearing or for the deposition, and all of the Court's attempts to reach Plaintiff and Mr. Myrick went unanswered. *See* ECF No. 132 at 3-5. The Court issued an Order to Show Cause and later held a Show Cause Hearing on June 15, 2020. ECF Nos. 132, 148.

Plaintiff filed the promised Motion for Protective Order on June 15, 2020. ECF No. 145. In the Motion, Plaintiff asks that all documents at issue be redacted prior to Edith Sundby's deposition, and proposes specific redactions. *Id.* at 2. Again, Plaintiff contends that none of the requested redactions have any relevance to the defense of this case. *Id.* Defendants oppose the request. ECF Nos. 151, 152.

## II. THE PARTIES' POSITIONS

Plaintiff's Motion for Protective Order presents the requested redactions "in the narrowest possible fashion," merely setting forth the precise redactions Plaintiff seeks, without presenting any argument in support. *See* ECF No. 145. However, Plaintiff notes in the motion that "[t]he desired protective order issue is well known to the Court and defendants." *Id.* at 2 (citing ECF No. 139, Plaintiff's Written Response in Advance of Show Cause Hearing).

The Investor Defendants argue that (1) Plaintiff has failed to show good cause for the proposed redactions; (2) the documents do not contain private information, making only a "vague and brief reference to some undefined and nondescript claimed medical issue"; (3) even if the exhibits contained private information, "limited impairment of the right of privacy is allowed if properly justified by a need for the information that outweighs the privacy interest"; (4) the emails and letter "are highly relevant to the Investor Defendants' Sixth Affirmative Defense of Unclean Hands"; (5) Plaintiff has waived any claim of privacy rights in the documents by placing their contents at issue in this action; and (6) the requested redactions would change the meaning of the documents, and make the correspondence "incomplete and confusing." ECF No. 151 at 2-6. Generally, the Investor Defendants contend that Plaintiffs' attempt to redact the documents "is part of a bad faith and improper attempt to suppress relevant information in this matter." *Id.* at 6.

Marquee joined in the Investor Defendants' opposition and made additional arguments regarding the relevance of the documents in its joinder. ECF No. 152. Specifically, Marquee emphasizes that Edith Sundby is a co-trustee, noting that it previously argued that her absence from the Early Neutral Evaluation Conference ("ENE") violated the Court's order setting the ENE and jeopardized any potential for settlement. *Id.* at 2. Marquee asserts that Plaintiff's Motion for Protective Order and the redactions he seeks indicate that he has "failed to disclose material information to co-trustee Edith Littlefield Sundby prior to and over the court of this litigation that may impact the co-

trustee's position in the action," or that he otherwise lied under oath, as part of a "continuing pattern of bad faith evidencing his unclean hands in this litigation." *Id.* at 2-3.

In his Reply, Plaintiff argues that he has made the required showing of good cause, because he incorporated by reference his Written Response in Advance of Show Cause Hearing (ECF No. 139), which discusses his underlying reasons for unilaterally suspending Edith Sundby's deposition to prevent her from seeing the unredacted documents. *See* ECF No. 154 at 2-3 (quoting those portions of the Written Response that set forth the basis for his motion). Plaintiff also contends he has not placed his medical condition at issue in this action and has not waived his constitutional right to privacy. *Id.* at 4-5. Plaintiff also disagrees that any of the requested redactions would make the documents either confusing or incomplete. *Id.* at 8.

As for whether the documents are relevant to the Investor Defendants' affirmative defense, Plaintiff reiterates his contention that the sensitive words at issue are not relevant. Plaintiff adds that the 2018 emails in Exhibits 32 and 33 are from 2018, and are thus not relevant to the making of the 2017 loan. Further, Plaintiff argues that the April 29, 2017 email was sent three weeks before the May 17, 2017 loan application and was thus not sent to induce the Investor Defendants to fund the loan in 2017 as argued. *Id.* at 6. Plaintiff also asserts that the marital communications privilege protects the documents from disclosure even if they are relevant. *Id.* Plaintiff notes that, to the extent the Investor Defendants argue that Plaintiff sent the April 2017 correspondence to convince Marquee to recommend the funding of a third refinance of the loan to the Investor Defendants, Marquee never responded to Plaintiff or communicated with the Investor Defendants regarding Plaintiff's email, such that Defendants have not shown any reliance on the information in deciding whether to refinance. *Id.* at 7. Finally, Plaintiff argues that the Unclean Hands defense is not viable in any event, because only TILA statutory defenses can mitigate TILA liabilities. *Id.* at 6 (citing to the same argument in Plaintiff's Motion for Summary Judgment).

Plaintiff also takes issue with the Investor Defendants' position that they should be able to ask Edith Sundby during her deposition whether Plaintiff's representations in the

emails were true, which the Investor Defendants assert is "relevant to the issue of obtaining evidence of Plaintiff's 'unclean hands' in seeking to falsely and fraudulently lure the Investor Defendants into funding the 2017 loan through claims by Plaintiff of an ability to 'repay' the loan through a life insurance policy and a business deal." ECF No. 151 at 4. Plaintiff points out that Mr. Slome previously informed the Court during the May 29, 2020 hearing that he had agreed in an email to Plaintiff not to use Exhibits 17, 32, and 33 during Edith Sundby's deposition. ECF No. 154 at 7.

Turning to Marquee's response regarding whether Plaintiff has either failed to disclose material information to a co-trustee or has otherwise lied under oath regarding his health status, Plaintiff argues that Marquee's counsel is merely attempting to "<u>create</u> an *impact*ful issue" by being allowed to breach Plaintiff's personal privacy and the Sundbys' marital communication privilege. *Id.* at 8 (emphasis in original). Contrary to Marquee's position that Plaintiff has engaged in a pattern of bad-faith conduct, Plaintiff argues that he has never deceived the Court or acted in bad faith, but gives examples of purported deceptions by defense counsel demonstrating that Defendants have acted in bad faith. *Id.* at 8-9.

Lastly, Plaintiff's Reply raises a new request that, in addition to ordering the requested redactions, the Court should "make sure any order includes adherence to both the letter and spirit of the redactions" by ordering Defendants "not to attempt to moot those redactions by framing any question in a manner that would violate Plaintiff's right to privacy." *Id.* at 10.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery in civil actions. Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The question of relevancy "should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on

the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). *See also Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 926149, at *2 (S.D. Cal. Mar. 4, 2015) ("Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The Court is vested with "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). *See also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

Rule 30 of the Federal Rules permits a deponent or a party "[a]t any time during a deposition" to "move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). "The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting . . . party so demands, the deposition must be suspended for the time necessary to obtain an order" from the Court. *Id.* Upon consideration of the motion, the Court "may order that the deposition be terminated or limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B).

Rule 26(c)(1), in turn, governs protective orders. That subprovision of the Rule provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>     (A) forbidding the disclosure or discovery;
>     . . . [or]

> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1).

All documents at issue in the motion were produced during the ordinary course of discovery. "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where good cause is shown." *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). In order to make the requisite showing of good cause, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also Beckman Indus., Inc. v. Int'l Ins. Co*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

To evaluate whether Plaintiff has met the "good cause" standard of Rule 26(c), the Court must balance the need for discovery of the materials against the need for confidentiality. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Phillips*, 307 F.3d at 1213). The Ninth Circuit has characterized the movant's burden to show good cause for a protective order denying discovery as a "heavy" one, given "the liberal discovery principles" of the Federal Rules of Civil Procedure. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Even where the movant succeeds in showing that particularized harm will result from disclosure of certain information, the Court then "balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). The factors set forth in *Glenmede* are "neither mandatory nor

exhaustive," but are useful in evaluating whether the movant has shown good cause to protect discovery materials under Rule 26(c):

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Glenmede*, 56 F.3d at 483. *See also Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 n.6 (9th Cir. 2004) (Bea, J., dissenting from denial of rehearing en banc) (listing the *Glenmede* factors as those factors courts have considered in analyzing whether the Rule 26(c) "good cause" standard has been met).

## IV. DISCUSSION

Both parties' arguments regarding any constitutional privacy right miss the mark. There is no constitutional right to privacy implicated here, because there is no state action. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598 n.23 (1977); *Banga v. Am. Express Cards*, No. 2:06-CV-0880GEBGGHPS, 2007 WL 474182, at *2 (E.D. Cal. Feb. 9, 2007) ("The federal constitutional right of privacy does not protect against private infringement. Governmental regulation does not convert a private enterprise into governmental action, *nor does the issuance of a subpoena convert a private cause of action into state action*.") (internal citations omitted) (emphasis added); *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 650 n.8 (Cal. 1994) ("Like other rights contained in or derived from provisions of the Bill of Rights, the federal constitutional right to privacy applies only against state action"). The documents at issue were produced by Plaintiff and Marquee during pre-trial discovery. Whether defense counsel may question a third party about discovery documents during a deposition is governed by Rule 26(c), not the Constitution.

Plaintiff's argument that the marital communications privilege prohibits disclosure of the unredacted exhibits to his wife also misses the mark. The documents at issue are communications between Plaintiff and third parties. The marital communications privilege only applies to "words or acts intended as communication to the other spouse." *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990). The privilege does not extend to statements made to third parties. *Id*; *see also Pereira v. United States*, 347 U.S. 1, 6 (1954); *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004). While Plaintiff is correct that the privilege extends to actions, as his own citation reveals, it only "protects statements or actions that are intended as confidential communications between spouses[.]" ECF No. 154 at 6 (quoting *United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005)). The "action" of not revealing information to one's spouse is not itself an action *intended to be a communication to one's spouse*, and Plaintiff presents no authority to support such an argument.

Therefore, because no constitutional rights or evidentiary privileges are implicated here, the Court turns to the applicable "good cause" standard under Rule 26(c).

In an effort to meet his burden of showing that specific prejudice or harm will result if no protective order is granted, Plaintiff explains that his wife was diagnosed with stage four cancer in 2007, and has since undergone substantial and invasive treatments to fight the illness, including 79 rounds of chemotherapy and four major surgeries. ECF No. 139 at 5-6. Therefore, Plaintiff has done "everything possible to reduce or eliminate stress she might otherwise experience," and he argues that showing her the exhibits "would unnecessarily and unjustifiably cause her anguish, threaten her health, and burden the marriage relationship." *Id.*; *see also* ECF No. 154 at 2.

Weighing the relevant factors as to whether Plaintiff has met his "heavy burden" to show good cause for the requested protective order in light of the liberal discovery principles of the Federal Rules of Civil Procedure, the Court finds the motion should be denied. *See Blankenship*, 519 F.2d at 429; *Phillips*, 307 F.3d at 1211; *Glenmede*, 56 F.3d at 483.

The Court is sympathetic to Plaintiff's desire to protect his wife from undue stress or anguish. Indeed, the Court is inclined to agree that Plaintiff has shown that particularized harm would result if Mrs. Sundby were informed by surprise that her husband is currently suffering from a serious illness. However, the exhibits at issue do not contain such information. There is no health or medical information contained in any of the exhibits. Exhibits 32 and 33 from May 2018 refer vaguely to "when [Plaintiff is] gone," with no indication that such a time is soon to pass. ECF No. 139, Exs. 5, 6. Similarly, the April 2017 email mentions only "some very personal information" and states "no one, even [E]die, is aware of this very recent development . . . see the attached[.]" ECF No. 139, Ex. 4. The attached correspondence, in turn, refers only to "a medical condition" that has "intervened." ECF No. 139, Ex. 7. The correspondence does not even specify whose medical condition it is, let alone the severity or nature of the condition. Moreover, all the exhibits are now 2-3 years old and do not refer to a current state of affairs.

Even if it is true that allowing the unredacted versions of these exhibits to be shown to Edith Sundby during her deposition would result in specific harm to her, the inquiry does not end there. Turning to the relevant *Glenmede* factors, first, the Court finds that any privacy interests Plaintiff asserts in the correspondence are *de minimis* and remote in time. Plaintiff shared the information in the correspondence with multiple third parties and produced two of the exhibits during discovery. And again, to the extent the correspondence makes a vague and implied reference to Plaintiff's health status, these references are dated by 2-3 years, and Plaintiff's current health information is not threatened by their disclosure. However, the Court acknowledges that Plaintiff does have some privacy interest at stake here, to the extent the exhibits reference a potential medical condition. The first factor thus weighs slightly in Plaintiff's favor.

As for the second factor, Plaintiff has failed to show that the information is not being sought for a legitimate purpose. Plaintiff argues that the requested redactions have no possible relevance to the case, but Defendants persuasively rebut this argument. Specifically, Defendants contend the correspondence is relevant because Plaintiff wrote

the April 2017 email during discussions of whether Plaintiff could meet his payment obligations on the 2017 loan, which he applied for three weeks later, and the May 2018 email was sent during discussions with Marquee regarding whether they could reach an agreement to avoid an acceleration of the 2017 loan. The Investor Defendants point to other language in Plaintiff's April 2017 email stating that "there is ABSOLUTE certainty that [Plaintiff's] obligations will be met," followed by Plaintiff's discussion of a $6 million life insurance policy in the irrevocable trust, providing that "the trustee shall pay off the full balance of the mortgage or other indebtedness then owed" if not satisfied at the time of the settlor's death. ECF No. 139, Ex. 4. Based on this language and the attached Morgan Stanley letter proposing an exclusive licensing deal, the Investor Defendants argue that Plaintiff was "seeking to falsely and fraudulently lure the Investor Defendants into funding the 2017 loan through claims by Plaintiff of an ability to 'repay' the loan through a life insurance policy and a business deal." ECF No. 151 at 4. Therefore, they argue that questioning Plaintiff's wife regarding the truthfulness of these representations is relevant to the unclean hands defense.

The Investor Defendants are entitled to use the correspondence to try to support their affirmative defense of unclean hands. Plaintiff argues that equitable defenses cannot defeat TILA liability. Plaintiff further refutes that the timing of the emails could support an unclean hands argument, since the April 2017 email predated his loan application by three weeks and the May 2018 correspondence took place well after the loan was made. However, Plaintiff's arguments do not show that Defendants are not seeking to use the information for a legitimate purpose. Whether the Court will ultimately grant summary judgment in Plaintiff's favor on the unclean hands defense has no bearing on whether the Investor Defendants are entitled to conduct discovery to support that defense. Similarly, Plaintiff's argument regarding the timing of the emails attacks only the strength of the defense, not whether the Investor Defendants are entitled to seek discovery to build their case. The second factor before the Court is merely "whether the information is being sought for a legitimate purpose or for an improper purpose," not whether the affirmative defense

will ultimately win the day. *Glenmede*, 56 F.3d at 483. *See also United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, California*, No. 13CV02027JSTMEJ, 2014 WL 2126912, at *2 (N.D. Cal. May 22, 2014) (rejecting the Government's argument that the defendant "is not entitled to discovery because it will not be able to establish any of its affirmative defenses at trial" because the defendant's "ability to prove its defenses is not the standard against which relevance is determined."). Because the sensitive portions of the documents and the co-trustee's knowledge thereof are relevant to the Investor Defendants' unclean hands defense, Plaintiff has not shown that the portions he seeks to redact are irrelevant, or that Defendants are attempting to use the exhibits for an improper purpose or in bad faith. Therefore, particularly in view of the liberal rules of discovery, this factor weighs strongly in favor of Defendants.

The third factor is whether disclosure of the information will cause a party embarrassment. Plaintiff does not argue that he might be embarrassed by disclosure of the information. *See generally* ECF Nos. 139, 145. Rather, Plaintiff stakes his argument on the Court's power under Rule 26 to issue an order "to protect a party or person from . . . oppression." *See* ECF No. 154 at 2. Nonetheless, keeping in mind that the *Glenmede* factors are merely guidelines to the Court's "good cause" analysis, and that they are neither mandatory nor exhaustive, the Court gives due credit to Plaintiff's stance that the potential revelation of information to his wife that he intentionally withheld from her may burden the marriage relationship and otherwise cause her anguish.

All three of the factors concerning public interests being weighed against private interests—i.e., whether confidentiality is being sought over information important to public health and safety, whether a party benefitting from the order of confidentiality is a public entity or official, and whether the case involves issues important to the public—are inapplicable here. Therefore, the only remaining relevant factor is whether the sharing of information among litigants will promote fairness and efficiency. For the reasons that follow, this is the determining factor here.

As discussed above, the Court finds that Defendants have sufficiently established that the portions of the documents Plaintiff seeks to redact are relevant to the unclean hands defense. In its joinder response, Defendant Marquee also argues that Edith Sundby's knowledge of the contents of the documents bear on whether Plaintiff "failed to disclose material information to co-trustee Edith Littlefield Sundby prior to and over the court of this litigation that may impact the co-trustee's position in the action[.]" ECF No. 152 at 3. That issue goes to Plaintiff's credibility, which is relevant to discovery. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) ("[I]nformation is 'relevant' if it relates to the claim or defense of the party seeking discovery or any other party, *or to the credibility of any witness*.") (citation omitted) (emphasis added).

"[T]he deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citations omitted). Therefore, keeping in mind that relevance should be construed broadly, the Court finds that prohibiting Defendants from pursuing these avenues of inquiry during discovery would be unfair to their ability to develop their case.[2] Additionally, Edith Sundby is a co-trustee, and her interests are thus

---

[2] In reaching this conclusion, the Court is particularly mindful of the potential impact that permitting the redactions now could have on Defendants' ability to use the unredacted versions of the documents at later stages in the litigation, e.g., in dispositive motions or at trial. "When a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips*, 307 F.3d at 1213. For that reason, in the related context of sealed court records, the burden shifts to the party seeking disclosure of a document that has previously been restricted from public access by a valid protective order to "present sufficiently compelling reasons" why it should be disclosed. *Id.* Although the motion before the Court does not touch on the public's right of access to the documents, the principle remains the same—a finding of good cause for the redactions of the exhibits now, based on a sympathetic assignment of significant weight to the purported harm that their

directly affected by the present litigation. Restricting her access to documents produced during the ordinary course of discovery in this action in order to protect her from stress or anguish is not the Court's role, even while the Court is sympathetic to Plaintiff's desire to protect his wife from emotional hardship. Consequently, balancing the needs for discovery against the needs for confidentiality, the Court finds Plaintiff has failed to show good cause for the requested redactions prior to Edith Sundby's deposition.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Protective Order (ECF No. 145) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 23, 2020

*Allison H. Goddard*
Honorable Allison H. Goddard
United States Magistrate Judge

---

disclosure may cause to a specific deponent, could unfairly impact Defendants' ability to use the unredacted documents in this litigation later.

16
3:19-cv-0390-GPC-AHG