UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dale Sundby, Trustee,<br><br>                         Plaintiff,<br><br>v.<br><br>Marquee Funding Group, Inc.; Salomon Benzimra, Trustee; Stanley Kesselman, Trustee; Jeffrey Myers; Kathleen Myers; Andres Salsido, Trustee; Benning Management Group 401(k) Profit Sharing Plan; Christopher Myers; Vickie McCarty; Dolores Thompson; Kimberly Gill Rabinoff; Steven M. Cobin, Trustee; Susan L. Cobin, Trustee; Equity Trust Company, Custodian FBO Steven M. Cobin Traditional IRA; Todd B. Cobin, Trustee; Barbara A. Cobin, Trustee; Fasack Investments LLC; and Does 1-X,<br><br>                      Defendants. | Case No.: 19-cv-00390-GPC-AHG<br><br>**ORDER DENYING PLAINTIFF'S OBJECTION TO THE DENIAL OF A PROTECTIVE ORDER.**<br><br>**(ECF No. 170.)** |

Presently before the Court is Plaintiff Dale Sundby's objection to the denial of his motion for a protective order seeking redactions in four exhibits that Defendants may use at a forthcoming deposition of Mrs. Edith Sundby, his spouse and co-trustee to the estate in dispute. (ECF No. 170).

1

Having reviewed the Magistrate Order and considered the parties' submissions and applicable law, the Court **DENIES** Plaintiff's objection.

**I.      Background**

**A. The Disputed Exhibits**

The instant objection arises from a discovery order by the Magistrate Judge denying Plaintiff's request for a protective order. Plaintiff sought to redact specific language as to four documents: (1) an e-mail sent by Plaintiff to Mr. R.J. Solovy, Vice President of Defendant Marquee Funding Group, Inc., in May 2018 ("Exhibit 32"); (2) Mr. Solovy's response e-mail ("Exhibit 33"); (3) an e-mail sent by Plaintiff to Mr. Solovy in April 2017 ("Exhibit 17"); and (4) a letter attached to Exhibit 17, sent by Plaintiff to an executive at Morgan Stanley & Co., offering to license a patent-pending innovation ("Exhibit 118"). (ECF No. 139 at 36–42.)

In sum, Plaintiff argues that presenting the unredacted forms of these exhibits to Mrs. Sundby will violate his privacy, harm her health, and burden the marriage relationship. (ECF No. 154 at 2 (citing ECF No. 139 at 5–6)). This is particularly true because Plaintiff's spouse is unaware of the exhibits and any health issues allegedly mentioned in these documents. (ECF No. 154 at 4, 14.)

**B. The Magistrate Judge's Order**

The Magistrate Judge reached several legal and factual conclusions in her Order that Plaintiff now challenges. First, the Magistrate Judge concluded that neither Plaintiff's federal right to privacy nor the marital communications privilege precluded entering a protective order in this instance. (ECF No. 156 at 10–11.) Second, the Magistrate Judge found that Plaintiff failed to establish a particularized showing of harm in support of a protective order. (*Id.* at 11–12.) Lastly, the Magistrate held that the needs for discovery outweigh Plaintiff's stated needs for confidentiality, per *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995), because the exhibits are relevant to Defendants' affirmative defense of unclean hands and go to Plaintiff's credibility. (ECF No. 156 at 12–16); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307

F.3d 1206, 1212 (9th Cir. 2002) (adopting a factor-based analysis with reference to *Glenmede*).

### C. Procedural History

On June 1, 2020, Magistrate Judge Alison H. Goddard issued an order to show cause ("OSC") for why the Court should not impose sanctions against Plaintiff, Edith Sundby, and Mrs. Sundby's counsel, Mr. Russel Myrick, for failing to appear at a scheduled deposition, purportedly at Plaintiff's direction. (ECF No. 132 at 6–7.) On June 10, 2020, Plaintiff lodged his response to the Court's order to show cause ("Response"), (ECF No. 139). The Magistrate Judge later denied Plaintiff's request to file the Response under seal, and this Court has since found that the Magistrate Judge's decision was neither contrary to law nor clearly erroneous. (ECF Nos. 144, 176.)

On June 15, 2020, Plaintiff sought a protective order redacting certain language used in the exhibits attached to his Response to the OSC. (ECF No. 145.) On June 17, 2020, the Investor Defendants[1] filed an opposition. (ECF No. 151.) That same day, Defendant Marquee Funding Group, Inc. also filed an opposition to Plaintiff's motion. (ECF No. 152.) On June 19, 2020, Plaintiff filed a reply. (ECF No. 154.)

Once fully briefed, the Magistrate Judge considered the Parties' arguments and denied Plaintiff's request for a protective order on June 23, 2020. (ECF No. 156.) Plaintiff immediately gave notice that he intended to object to the ruling and then entered the instant Objection on July 7, 2020. (ECF No. 157, 170.) On July 8, 2020, the Investor Defendants filed a response to the Objection. (ECF No. 171.) On July 10, 2020, Plaintiff filed a reply. (ECF No. 172.)

/ /

---

[1] The "Investor Defendants" include Defendants Salomon Benzimra, Trustee, Stanley Kesselman, Trustee, Jeffrey Myers, Kathleen Myers, Andres Salsido Trustee, Benning Management Group 401(k) Profit Sharing Plan, Christopher Myers, Vickie McCarty, Delores Thompson, Kimberly Gill Rabinoff, Steven M. Cobin, Trustee, Susan L. Cobin, Trustee, Equity Trust Company, Custodian FBO Steven M. Cobin Traditional IRA, Todd B. Cobin, Trustee, Barbara A. Corbin, Trustee, Fasack Investments LLC. (ECF No. 151 at 1.)

## II.     Legal Standard

### A. Federal Rule of Civil Procedure ("Rule") 72

A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. § 636(b)(1). *See Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standards. Fed. R. Civ. P. 72(a); *see also Grimes v. City of San Francisco*, 951 F.2d 236, 240–41 (9th Cir. 1991) (holding that a magistrate judge's order "must be deferred to unless it is 'clearly erroneous or contrary to law'").

A magistrate judge's factual findings are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997); *Comput. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The "'clearly erroneous' standard is significantly deferential." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993); *see Phoenix Eng'g & Supply v. Universal Elec.*, 104 F.3d 1137, 1141 (9th Cir. 1997) ("the clearly erroneous standard allows [for] great deference").

The "contrary to law" standard allows independent, plenary review of purely legal determinations by the magistrate judge. *See Miller v. Akanno*, No. 1:12-cv-01013-LJO, 2015 WL 224811, at *1 (E.D. Cal. Jan. 15, 2015) (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir. 1992)); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. 2003); *see also Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). An order is contrary to law when it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes or case precedent." *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983).

### B. Rule 26 Standard

Fed. R. Civ. P. 26(c) permits a party from whom discovery is sought to "move for a protective order in the court where the action is pending -- or as an alternative on

4

matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "The burden is on the person seeking the protective order to demonstrate good cause." *Grano v. Sodexo Mgmt., Inc.*, No. 18-CV-1818-GPC, 2020 WL 1975057, at *2 (S.D. Cal. Apr. 24, 2020) (quotation omitted).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–12 (9th Cir. 2002) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* If a court finds particularized harm will result from disclosure of information to the public, it then balances the public and private interests to decide whether a protective order is necessary. *See Stormans, Inc. v. Selecky*, 251 F.R.D. 573, 576 (W.D. Wash. 2008) (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995)).

The Court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**III.   Discussion**

**A. Plaintiff's Constitutional Right to Privacy**

First, the Magistrate Judge found that the federal constitution's right to privacy was not "implicated here, because there is no state action." (ECF No. 156 at 10.) In fact, the documents at issue were produced by Plaintiff and Defendant Marquee Funding Group, Inc. during pre-trial discovery. The Magistrate Judge found that Rule 26(c), not the Constitution, governs whether defense counsel may question a third party about discovery documents during a deposition. (ECF No. 156 at 10.)

Plaintiff argues that the Court's privacy finding ignored the Plaintiff's right of privacy under the California Constitution. (ECF No. 170 at 5–6.) Defendant responds that the right to privacy is conditional, whether under federal or state law. (ECF No. 171 at 3–4.) The Court finds that Plaintiff failed to raise the California Constitution as a basis for his claimed right to privacy and waived the right to rely upon it. (*See* ECF No. 145; ECF No. 154 at 3–5 (citing to various cases each discussing the applicability of the U.S. Constitution, not the California Constitution)). In any event, the Magistrate Judge properly engaged in a balancing of multiple factors in denying the protective order.

"Federal courts generally recognize a right of privacy that can be raised in response to discovery requests." *Allen v. Woodford*, No. CV-F-051104-OWW, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30, 2007) (citations omitted). "The party or person whose privacy is affected may either object to the discovery request or seek a protective order." *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). As with questions of privilege, an assertion of privacy in federal question cases "involves a balancing of interests under federal law." *Allen*, 2007 WL 309485, at *2, *6; *see also Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) (considered plaintiff's federal right to privacy in addressing the non-disclosure of information during discovery). At most, and only in certain contexts, federal courts need only give "some weight" to rights protected under state law. *Soto*, 162 F.R.D. at 616 (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987)) (noting that such deference is appropriate, for example, in civil rights cases, including in assessing "the disclosure of police files").

Based on the applicable legal standard, the Magistrate Judge's decision was not contrary to law. The Magistrate Judge considered the impact of Plaintiff's federal right to privacy over medical information and found that, absent state action, Plaintiff's alleged intrusion was not protected by the U.S. Constitution. (ECF No. 156 at 10.) That reasoning comports with Ninth Circuit law on the right to privacy. *See Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 877 (9th Cir. 2008), *rev'd and remanded on other grounds*, 562 U.S. 134 (2011) (recognizing a right to privacy over medical information

and noting that such a right is only violated where "the government's actions compel disclosure of private information"); *see also Doe v. Beard*, 63 F. Supp. 3d 1159, 1165 (C.D. Cal. 2014) (recognizing a claim for invasion of privacy where plaintiff alleged "that prison officials . . . failed to retrieve (or even attempt to retrieve) [the plaintiff's] medical file even after Plaintiff explained that it had fallen into the hands of other prisoners and that he was receiving threats based on his HIV status.").

Moreover, to the extent that federal law requires a balancing of factors, the Magistrate Judge engaged in that balancing during her painstaking Rule 26(c) analysis. (ECF No. 156 at 11–16.) That too comports with how other courts have treated alleged threats to privacy in the discovery context. *See Woodford*, 2007 WL 309485, at \*6 (noting the Court's power to remedy a privacy violation was grounded in Rule 26); *see also Stallworth*, 288 F.R.D. at 444 (listing some factors which the Magistrate Judge considered, including the type of record requested, the information it contains, the potential for harm in any subsequent non-consensual disclosure, the injury from disclosure, and the degree of need for access to the information).

Plaintiff, moreover, failed to raise the California Constitution before the Magistrate Judge and cites no authority to support application of the right to privacy under the California Constitution to the instant facts. (*See* ECF No. 170 at 5–6). Under the California Constitution, people enjoy a "constitutional right to privacy for medical records." *Heda v. Superior Court*, 225 Cal. App. 3d 525, 528 (Ct. App. 1990); *see also Binder v. Superior Court*, 196 Cal. App. 3d 893, 901 (Ct. App. 1987), *disapproved of by Williams v. Superior Court on other grounds*, 3 Cal. 5th 531 (2017) ("[M]edical records are the type of information which is protected by the right of privacy . . ."). Here, the documents that are the subject of the motion for protective order are not medical records. Instead, they consist of email communications between Plaintiff and R.J. Solovy, a Vice President and broker at Defendant Marque Funding Group, Inc., regarding a potential extension of the 2017 loan at issue in this litigation (Exhibits 32 and 33); an email communication between Plaintiff and Mr. Solovy concerning "Updated Loan Paperwork"

7

and Plaintiff's ability to meet his payment obligations (Exhibit 17); and a letter from Plaintiff to a Chairman and CEO of Morgan Stanley regarding an exclusive licensing opportunity (Exhibit 118). (*See* ECF No. 139 at 36–42.) Plaintiff has failed to demonstrate how or why these letters should be treated as medical records.

After searching for federal decisions considering a plaintiff's right to privacy under the California Constitution in discovery matters, the Court has found *Allen v. Similasan Corp.*, No. 12-CV-376-BTM, 2014 WL 1806927, at *3 (S.D. Cal. May 6, 2014). There, the court considered the California Constitution in assessing the scope of permissible discovery involving requests for the plaintiff's health records and information. *Id. Allen*, however, involved overbroad and open-ended requests for medical records which "were highly likely to return sensitive information decidedly unrelated to the issues" in the case. *Id. Allen* did not involve a motion for a protective order relating to documents that were already produced and which relate to an affirmative defense advanced by the Defendants.

Accordingly, the Magistrate Judge did not err by applying federal law to Plaintiff's privacy argument or electing not to apply California law.

## B. Plaintiff's Marital Communications Privilege

Having found that Plaintiff's assertion of privacy is not governed by the California Constitution, the Magistrate also found that the marital communications privilege did not apply here because the "privilege does not extend to statements made to third parties." (ECF No. 156 at 11.) Plaintiff argues that the marital communications privilege prohibits disclosure of the unredacted exhibits to his wife and that Defendants cannot question his wife as to the exhibits without requiring answers that violate the privilege. (ECF No. 170 at 4–5.) Plaintiff's interpretation of the privilege as to the subject exhibits is mistaken.

The marital communications "(1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, i.e., those not made in the presence of, or likely to be overheard by, third parties." *United States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005) (quotation and brackets omitted). Here, the subject exhibits fall outside the third factor because they

8

constitute communications between the Plaintiff and people other than his spouse. *See United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005) (affirming district court's holding that a husband's letter addressed to individuals other than his spouse was not covered by the marital communications privilege); *see also United States v. Griffin*, 440 F.3d 1138, 1144 (9th Cir. 2006) (finding that, even where a communication between spouses in intended to be confidential, exposure to a third party places the communication outside the protection of the privilege).

In addition, the Court concurs with the Magistrate Judge in finding that Defendants revealing the information in the subject exhibits to Plaintiff's spouse does not trigger the privilege. (ECF No. 156 at 11.) Moreover, to the extent that Defendants' deposition gives rise to the inference that Mrs. Sundby's answers violated Plaintiff's marital communications privilege,[2] the Court can engage in that fact-specific inquiry following the deposition as needed. *See, e.g.*, *K.J.P. v. Cty. of San Diego*, No. 15-CV-2692-H, 2017 WL 3288464, at *4 (S.D. Cal. Aug. 2, 2017) (discussing the effect of the marital communications privilege on spouse's responses to deposition questioning).

Accordingly, the Magistrate Judge correctly concluded that the marital communications privilege does not apply here.

## C. The Magistrate Judge's Rule 26 Analysis

The Magistrate Judge reached two interrelated conclusions in its Rule 26 analysis. First, the Magistrate Judge found that Plaintiff has not shown that particularized harm would result if Mrs. Sundby were shown the subject exhibits in unredacted form. (ECF No. 156 at 12.) Second, the Magistrate Judge found that Defendants' needs for discovery

---

[2] Plaintiff also asserts that the deposition as a whole violates the marital privilege because Defendants will ask Mrs. Sundby "what Plaintiff communicated to her, or did not communicate to her." (ECF No. 170 at 5.) That is not true because, for example, Plaintiff's spouse could instead "offer testimony regarding [her own] *observations* without violating the privilege." *Brown v. Wimberly*, No. 1:14-CV-01812-JLT, 2016 WL 3569618, at *2 (E.D. Cal. June 30, 2016) (emphasis in original); *see also United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir. 1980) (holding that a wife's observation of boxes of files being moved into offices was not a communicative act protected by the marital privilege).

outweigh the Plaintiff's needs for confidentiality. (ECF No. 156 at 12–16.) For the reasons below, the Court finds that the Magistrate Judge was neither "clearly erroneous [n]or contrary to law." *See Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

### i. Showing of Particularized Harm

To establish good cause, Plaintiff must make a particularized showing that harm will result absent the sought-after redactions. *See San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rather, "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" is necessary. *Ioane v. Spjute*, No. 1:07-CV-00620-AWI, 2014 WL 2930790, at *2 (E.D. Cal. June 27, 2014) (quotation omitted). Plaintiff must put forward "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Id.* (quotation omitted).

In applying this standard, Plaintiff has not carried his burden in showing specific harm will result to his spouse or to his privacy in showing her the unredacted forms of each of exhibit. (ECF No. 156 at 12.) First, Plaintiff asserted the same, conclusory argument as to each exhibit in his initial motion. Plaintiff stated that the specific redactions pertain to four "highly personal and confidential" documents and will cause Plaintiff's spouse "awareness and alarm." (ECF No. 145 at 2.) That is plainly insufficient. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) (quotation omitted) (affirming that the movant for a protective order "bears the burden, for each particular document," and criticizing movant's failure to "particular portion[s] of the transcript that remain[] confidential").

In reply before the Magistrate, Plaintiff offered additional detail. Plaintiff asserted that, in addition to invading his privacy, the documents would cause his spouse "anguish,

threaten her health, and burden the marriage relationship" because she remains "unaware" of Plaintiff's health condition. (ECF No. 154 at 2, 4, 14) (boldness removed). Plaintiff also explained that his spouse's health has deteriorated over the course of a thirteen-year struggle with stage four cancer, during which she has experienced four recurrences, 79 rounds of chemotherapy, four major surgeries, and high-density radiations. (*Id.*) Thus, Plaintiff asserted that any implication that Plaintiff may be ill will harm her health. (*Id.*; *see also* ECF No. 170 at 7–8.) These assertions are concerning and require the Court to look closely at the information that Plaintiff seeks to redact.

To obtain any relief, the Plaintiff must first meet his burden in explaining how each of the phrases he seeks to redact would invade his privacy or harm his spouse. The Court concurs with the Magistrate that Plaintiff has not met his burden. (ECF No. 156 at 11–12.) As to Exhibits 32 and 33, two e-mails between Plaintiff and R.J. Solovy on May 2018, Plaintiff seeks to redact the innocuous phrase, "when I'm gone." (ECF No. 145.) In Exhibit 17, Plaintiff seeks to redact a similar phrase, "even if I succumb in the intervening period," as well as some language indicating that Plaintiff wants to convey personal information to Mr. Solovy via an attachment that is unknown to other people, including to Mrs. Sundby. Exhibit 118 is that attachment and it contains a letter soliciting a new business deal. (ECF No. 139 at 142.) Plaintiff seeks to redact two references in the document – that Plaintiff was "leaving Tuesday for Mayo Clinic" and the second clause within the phrase, "While it has not been my plan to offer an exclusive license, a medical condition has intervened." (*Id.*)

These proposed redactions, despite Plaintiff's arguments, contain no concrete health or medical information.[3] (ECF No. 156 at 12.) Even if something can be inferred from the documents as to Plaintiff's health in 2017 or 2018, the documents themselves

---

[3] The Court notes an important exception to the information above: Plaintiff's reference to the "Mayo Clinic." (ECF No. 139 at 42.) That is a specific reference which may trigger Plaintiff's privacy interest. However, given the Court's conclusions under its Rule 26 balancing analysis, the Court finds that no protective order should be issued even as to this comment.

contain no "specific information" regarding Plaintiff's physical or mental health including, for example, a medical diagnosis, a list of symptoms or medication, his doctors' information, or specific medical records. *Ioane,* 2014 WL 2930790, at *3. The e-mails do not even describe the general nature or severity of the referenced "medical condition." And, of course, the e-mails are not themselves medical records. Hence, Plaintiff fails to establish a particularized showing of harm to his own privacy interests.

In addition, Plaintiff again makes no individualized arguments as to the impact of each exhibit's allegedly sensitive language on Mrs. Sundby's health in briefing the issue before the Magistrate Judge. (*See, e.g.*, ECF No. 154 at 2–3 (not differentiating between the exhibits in the "good cause" argument); *id.* at 5–6 (differentiating between the exhibits but only as to timing)). Even assuming that the above documents in total would necessarily convey to Mrs. Sundby that Plaintiff was concerned for his own health and didn't inform her of that several years ago, Plaintiff does not explain why or how that inference would aggravate Mrs. Sundby's specific illness or health. *Cf. Harmon v. City of Santa Clara*, 323 F.R.D. 617, 624 (N.D. Cal. 2018) (recognizing a police department made a showing of particularized harm where it was unavoidable that disclosing a video would reveal the identities of undercover officers). Plaintiff, for example, offers no "concrete examples" of how Mrs. Sundby's health would be impacted other than a general concern that stress may be harmful. *Ioane*, 2014 WL 2930790, at *3 (relying on the lack of concrete examples, in part, to deny a protective order). Plaintiff also offers no comparisons to other people who have may have experienced a similar injury to particularize the harm. *Cf. Stormans, Inc. v. Selecky*, 251 F.R.D. 573, 576–77 (W.D. Wash. 2008) (finding that plaintiff met their burden in showing a particularized harm by "substantiat[ing] their argument with a specific example" of another employee at the same company that suffered the very harm plaintiff feared under similar circumstances).

Consequently, both because the language of the subject exhibits does not betray Plaintiff's privacy, and because Plaintiff fails to articulate a particularized harm to Mrs. Sundby from each statement, the Court finds that the Magistrate Judge did not clearly err

in concluding that Plaintiff has not shown that particularized harm would result if Mrs. Sundby were shown the subject exhibits in unredacted form. (ECF No. 156 at 12); *see Masayesva v. Zah*, 65 F.3d 1445, 1453 (9th Cir. 1995) (noting that the clear error standard in reviewing a lower court's "application of the law to the facts").

### ii. Balancing Factors

While Plaintiff has not made a particularized showing to warrant a protective order, the Court, nonetheless, further considers the *Glenmede* factors in reviewing the Magistrate Judge's conclusions.

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (noting that courts of the Ninth Circuit apply *Glenmede*). Balancing the *Glenmede* factors, the Court finds that denial of the protective order is appropriate.

The first *Glenmede* factor weighs against the Plaintiff as to Exhibits 32 and 33. As explained above, none of the documents (apart from Exhibit 118) expressly state that Plaintiff is ill or has a medical condition. Certainly, the documents lack specific information as to Plaintiff's heath. And, especially as to Exhibits 32 and 33, an e-mail and response where Plaintiff expressly stated that he was "unwilling to share personal matters," (*see* ECF No. 139 at 38, 40), Plaintiff's privacy interests are not at stake. The

13

Court is not convinced that presenting the fleeting, dated references of Exhibits 32 and 33 of Plaintiff's unexplained, future passing to Mrs. Sundby will betray his privacy. (ECF No. 156 at 12.)

As to Exhibits 17 and 18, the Court finds that the first *Glenmede* factor weighs in favor of the Plaintiff but only slightly given the lack of specificity regarding Plaintiff's medical information. Exhibit 17 contains some indicia of Plaintiff's understanding that the e-mail was private, including that it was marked confidential and states for "your eyes only." (ECF No. 139 at 36.) As such, Plaintiff may have a privacy interest in the e-mail. *See Yonemoto v. Dep't of Veterans Affairs*, No. CIV. 06-00378 BMK, 2007 WL 1310165, at *4 (D. Haw. May 2, 2007), *appeal dismissed as moot and case remanded*, 305 F. App'x 333 (9th Cir. 2008) (recognizing "a cognizable privacy interest" redacted portions of an e-mail containing the author's personal thoughts regarding the plaintiff seeking the documents). Exhibit 118 explicitly references a "medical condition" in conjunction with an admission that Plaintiff was traveling to the Mayo Hospital shortly, such that a reader may infer Plaintiff was ill from reading the letter. (ECF No. 139 at 42.) For this reason, Plaintiff may also have a privacy interest in the letter.

These privacy interests, however, are minimal because Exhibits 17 and 18 do not expressly convey medical information about the Plaintiff, including any actual medical records or references to a specific illness. Plaintiff also shared these documents with multiple third parties. (*See* ECF No. 139 at 42 (sent to executive at Morgan Stanley); ECF No. 139 at 36 (sent to R.H. Solovy with permission to share with "Jeff")). And, the items were also later turned over in discovery such that they are "presumptively public." *See San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). Thus, the first *Glenmede* factors weigh in Plaintiff's favor as to Exhibits 17 and 118 *slightly* and not at all as to Exhibits 32 and 33.

As to the second *Glenmede* factor, the Court finds that the Magistrate Judge did not clearly err in finding that Defendants seek to use the exhibits for a legitimate purpose. Defendants explain that the exhibits "are highly relevant to the Investor Defendants'

14

Sixth Affirmative Defense of Unclean Hands." (ECF No. 151 at 4.) The Investor Defendants argue that Plaintiff communicated two facts pertaining to his finances that materially impacted their decision to fund the 2017 loan: (1) that Plaintiff might obtain new income through a business venture with Morgan Stanley as indicated in Exhibit 118, and (2) that there was a $6 million dollar life insurance policy available to Plaintiff's spouse if he passed before obtaining the venture. (ECF No. 151 at 4.) Defendants likewise argued that Exhibits 32 and 33 also relate to Plaintiff's prior efforts to "fraudulently induce the Investor Defendants to fund the 2017 loan" by "ask[ing] Marquee Funding Group, Inc. to pass this information along to the Investor Defendants." (ECF No. 151 at 4.) And, because Defendants wish to challenge these documents and Plaintiff's assertions therein as "fraudulent," Mrs. Sundby's answers to questions regarding the exhibits are relevant to the affirmative defense of unclean hands. Thus, to the extent that an unclean hands defense is permissible here,[4] the Court cannot say that

---

[4] The Magistrate Judge did not determine whether Defendants' unclean hands defense is permissible under TILA. (ECF No. 156 at 13 ("Whether the Court will ultimately grant summary judgment in Plaintiff's favor on the unclean hands defense has no bearing on whether the Investor Defendants are entitled to conduct discovery to support that defense.")) Plaintiff argues that the Magistrate Judge thus erred in considering the relevance of the subject exhibits to Defendants' defense of unclean hands because that defense is not permissible under TILA. (ECF No. 170 at 3–4.) The Investor Defendants respond that the "affirmative defense of 'unclean hands' based on the Plaintiff misstating relevant facts and fraudulently inducing a lender to fund a refinance loan is relevant to establishing this defense in the instant action." (ECF No. 171 at 5.)

The Court finds that the Magistrate Judge did not err in assuming *arguendo* the defense of unclean hands can apply in the context of TILA and thus considering the subject exhibits' relevance to that defense. First, deciding whether an affirmative defense is permitted under TILA requires entering a dispositive order, and thus the Magistrate Judge lacked the authority to decide the question. A Magistrate Judge can consider dispositive motions only where the Court first refers the matter the Magistrate Judge and then the Magistrate Judge prepares a report and recommendation for the Court. *See* 28 U.S.C. § 636(b)(1)(A) (noting that the magistrate may hear a dispositive motion only when designated so by the district judge); *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013) (finding magistrate had authority to enter an order only because it "did not dispose of any claims or defenses"); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3068.2 (3d ed. 2020). Even when referred, the "Constitution requires that Article III judges exercise final decisionmaking authority." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1463 (10th Cir. 1988) (citing *United States v. Raddatz*, 447 U.S. 667, 683 (1980)).

19-cv-00390-GPC-AHG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Second, even if the Magistrate Judge had the authority to determine whether Defendants' "unclean hands" defense is permissible under TILA, Plaintiff's briefing was too cursory to permit adequate review. Plaintiff's motion for protective order does not raise this argument at all, (ECF No. 145), and, in reply, Plaintiff merely asserted that "only TILA statutory defenses can mitigate TILA liabilities." (ECF No. 154 at 6.) Plaintiff cited to no authorities for the Magistrate Judge to consider and instead directed the Magistrate Judge to his motion for summary judgment. (*Id.*)

Plaintiff's citation in his Objection to *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020) ("*Williams-Sonoma*"), is not to the contrary. (ECF No. 170 at 3–4.) There, the Ninth Circuit pointed out that, in its current form, Rule 26 permits discovery on matters "relevant to any party's claim or defense," as opposed to its prior, broader scope allowing discovery on matters "relevant to the subject matter involved in the pending action." *Williams-Sonoma*, 947 F.3d at 539. Here, the Magistrate Judge abided by that Rule in considering whether the discovery was relevant to Defendants' defense of unclean hands. Afterall, the Court has not stricken the defense or otherwise determined it is impermissible. (ECF No. 64.) Thus, the Magistrate Judge did not fail to comply with the requirements of *Williams-Sonoma*.

Ultimately, the Court is sympathetic to Plaintiff's concern that the Magistrate's Order permits discovery at this time on a defense which may ultimately fail as a matter of law at summary judgment. But that is not a reason to find that the Magistrate Judge erred under these circumstances as this is a problem of Plaintiff's own making. In adjudicating Plaintiff's motion to strike, the Court was unpersuaded by Plaintiff's argument that the Defendants' affirmative defenses lacked specificity. (ECF No. 64.) Plaintiff, moreover, did not then argue that TILA foreclosed an "unclean hands" defense specifically, (ECF No. 54), or seek reconsideration of the order. Likewise, Plaintiff's motion for judgment on the pleadings only raised this argument in reply and thus the Court declined to consider it at the time because doing so would have unfairly "deprive[d] Defendants of a meaningful opportunity to address" a dispositive argument. (ECF No. 82 at 12.) Now, Plaintiff raises the argument anew on summary judgment and the Court is inclined to address it then once all Parties have had a fair opportunity to brief it. (*See* ECF No. 165-2 at 24–25.) A hearing on Plaintiff's motion is currently set for August 28, 2020. (ECF No. 120.) The Court continued the hearing on Plaintiff's motion for summary judgment to August to (1) permit the completion of discovery that may be relevant to Defendants' responses, (2) avoid the risk that Plaintiff's motion might railroad Defendants as it was filed three months before the motions' deadline, and (3) in the interests of judicial economy and fairness, as are best served by hearing all the Parties' summary judgment motions together. (ECF No. 120 at 5–6.) In light of this procedural history, Plaintiff's efforts to now backdoor their TILA argument for earlier consideration through a motion for a protective order – and again only on reply so that Defendants were also unable to brief the argument before the Magistrate Judge – is not well taken. (ECF No. 145, 155.)

In sum, because the only question here is whether the Magistrate Judge's order is clearly erroneous or contrary to law, and not whether an affirmative defense is permissible as a matter of law, the Court finds that Plaintiff's objection fails. The Magistrate Judge's decision to not assess whether TILA permits a defense of unclean hands was not in error and, regardless, the Court need not entertain arguments Plaintiff failed to raise in his motion before the Magistrate. *See Coach, Inc. v. Citi Trends, Inc.*, No. CV 17-4775-DMG, 2019 WL 944577, at *2 (C.D. Cal. Jan. 10, 2019) (finding plaintiff's argument that certain discovery was "beyond the scope of this litigation" was "untimely" when not raised before the magistrate); *see also Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

1    these documents are irrelevant. The Court thus concurs with the Magistrate Judge's

2    finding that Defendants' desire to question Ms. Sundby about the exhibits arises from a

3    "legitimate purpose." (ECF No. 156 at 12–14.) The Court also concurs with the

4    Magistrate Judge that the timing of the e-mails does not make them irrelevant, and finds

5    that the specific language to be redacted is relevant to Defendants' affirmative defense of

6    unclean hands insofar as it contextualizes Plaintiff's references to a life insurance policy

7    and potential business venture. (*Id.* at 13.)

8         Relatedly, Plaintiff also speculates that Defendants' opposition to the redactions is

9    a bad faith attempt to "oppress" Plaintiff and Edith Sundby. (ECF No. 154 at 2.) Plaintiff

10   also alleges misconduct by defense counsel regarding his statements at a prior OSC

11   hearing and as to their prior representations of the date Defendant Marque Funding

12   Group, Inc. was incorporated. (*Id.* at 8–9.) These accusations respond, in part, to

13   Defendants' own allegations of Plaintiff's misconduct, including that Plaintiff has

14   allegedly "engaged in a continuing pattern of bad faith" conduct and that Plaintiff's

15   privacy claim is also in bad faith. (ECF No. 152 at 3; ECF No. 151 at 6.) Though these

16   accusations evince the Parties' truculent relationship, they do not directly support the

17   inference Plaintiff makes here, i.e., that Defendants' instant opposition stems from a

18   desire to "oppress" and thus a protective order is appropriate. *Cf. Priest v. Rotary*, 98

19   F.R.D. 755, 761 (N.D. Cal. 1983) (granting a protective order after reviewing defendants'

20   deposition questions and concluding that they "elicit[ed] information about plaintiff's

21   prior sexual relationships" with the purpose of harassing a plaintiff suing for sexual

22   harassment).

23        Moving to the third factor of "embarrassment," the Court concurs with the

24   Magistrate that "the potential revelation of information to [Plaintiff's] wife [regarding his

25   health status] that he intentionally withheld from her may burden the marriage

26   relationship and otherwise cause her anguish." (ECF No. 154 at 14.) That risk, however,

27   is mitigated by the lack of specific information included in the exhibits. In addition, the

28   Court notes that, even if the documents were redacted, this embarrassment would likely

17

not be avoided as Defense counsel might question Mrs. Sundby as to Plaintiff's prior health in connection with the life insurance policy anyway.

On the other hand, the fifth *Glenmede* factor of "fairness" counsels in favor of disclosing as much of the e-mails as possible to Ms. Sundby. Afterall, she is a co-trustee of the property and needs to be informed regarding Plaintiff's conduct on behalf of the trust with the various Defendants. This, moreover, may go to Plaintiff's credibility, and the Magistrate Judge did not err in relying on that observation. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) ("[I]nformation is 'relevant' if it relates to the claim or defense of the party seeking discovery or any other party, or to the credibility of any witness.")

Lastly, there is no overriding public interest in the information in the subject exhibits that weighs against redacting the e-mails. The instant matter does not involve "public health and safety." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995). Plaintiff is also not a "public entity or official," and the issues of this case are not "important to the public" insofar as this matter involves a mortgage dispute. *Id.*

Taking these factors together, the Court finds that the need to be able to present an affirmative defense here outweighs Plaintiff's minimal privacy interest in any dated, oblique reference to his health or the unfortunate risk that Plaintiff's spouse may be embarrassed by this information.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Objection.

**IT IS SO ORDERED.**

Dated:  July 21, 2020

Hon. Gonzalo P. Curiel
United States District Judge