1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

DALE SUNDBY,

                     Plaintiff,

v.

MARQUEE FUNDING GROUP, INC., *et al.*,

                    Defendants.

Case No.:  3:19-cv-00390-GPC-AHG

**ORDER:**

**(1) QUASHING ORDER TO SHOW CAUSE AGAINST EDITH SUNDBY AND RUSSEL MYRICK;**

**(2) DENYING AS MOOT MOTION TO MODIFY ORDER TO SHOW CAUSE;**

**(3) DENYING THE INVESTOR DEFENDANTS' MOTION FOR FURTHER SANCTIONS; and**

**(4) ISSUING SANCTIONS AGAINST PLAINTIFF DALE SUNDBY**

**[ECF Nos. 143, 188]**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

This matter comes before the Court upon consideration of the matters raised in the Court's Order to Show Cause (ECF No. 132), Plaintiff's initial and supplemental written responses to the Order to Show Cause (ECF Nos. 139, 155), the testimony at the June 15, 2020 Show Cause Hearing (ECF No. 148), and the Investor Defendants'[1] Motion for further sanctions and related briefing (ECF Nos. 188, 191, 199).

## I.    BACKGROUND

As recounted in the Order to Show Cause (ECF No. 132), which is incorporated by reference herein, Plaintiff did not want the Rule 45 deposition of his wife, Edith Sundby, to proceed as scheduled on May 29, 2020, absent an agreement from defense counsel that they would not use certain discovery documents as exhibits during Mrs. Sundby's deposition. Plaintiff's concern regarding the documents arose during Plaintiff's May 28, 2020 deposition, when defense counsel used the documents as deposition exhibits.

The exhibits at issue included: (1) Exhibit 17, an April 2017 email from Plaintiff to R.J. Solovy, the Vice President of Defendant Marquee Funding Group, Inc. ("Marquee") (the "April 2017 email"); (2) Exhibit 118, a letter attached to Exhibit 17, sent by Plaintiff to an executive at Morgan Stanley & Co, regarding Plaintiff's offer for an exclusive licensing deal for a patent-pending innovation (the "Morgan Stanley letter"); (3) Exhibit 32, a May 2018 email from Plaintiff to Mr. Solovy (the "May 2018 email"); and (4) Exhibit 33, Mr. Solovy's email in response to Plaintiff's email in Exhibit 32 (the "Solovy response email"). *See* ECF No. 139, Exs. 4-7.

Plaintiff contended the documents contained confidential information and asked

---

[1] The Investor Defendants include Salomon Benzimra, Trustee, Stanley Kesselman, Trustee, Jeffrey Myers, Kathleen Myers, Andres Salsido, Trustee, Benning Management Group 401(k) Profit Sharing Plan, Christopher Myers, Vickie McCarty, Delores Thompson, Kimberly Gill Rabinoff, Steven Cobin, Trustee, Susan Cobin, Trustee, Equity Trust Company, Custodian FBO Steven M. Cobin Traditional IRA, Todd B. Cobin, Trustee, Barbara A. Cobin, Trustee, and Fasack Investments, LLC.

defense counsel to agree to redact them or else not use them during his wife's deposition the next day. Defense counsel would not agree to the redactions. Edith Sundby's deposition was slated to move forward the following morning at 10:00 a.m.

At 9:13 a.m. on May 29, 2020, Plaintiff sent an email to defense counsel and counsel for his wife, Russel Myrick, with the subject line "Motion for Protective Order – Suspension of Edith Littlefield Sundby's Deposition Pursuant to FRCP 30(d)(3)(A)." ECF No. 139 at 52. The body of the email read:

> Pursuant to FRCP 30 et seq., and subsequent to our failed meet and confer efforts at yesterday's deposition, I am hereby demanding the witness deposition currently set for 10:00 a.m. today be "suspended for the time necessary to obtain an order." FRCP 30(d)(3)(A).
>
> I intend to move for a protective order under seal to limit the scope of this deposition promptly.

*Id.* Mr. Myrick responded three minutes later at 9:16 a.m.: "Received and understood. Please advise me when the Court has ruled on the motion so that we may re-calendar the deposition." *Id.*

Three minutes after Mr. Myrick responded to Plaintiff's email, at 9:19 a.m., counsel for the Investor Defendants Troy Slome also replied to all recipients, stating that he had spoken to Lew Landau, counsel for Marquee, "and informed him that I will not be introducing Exhibits 17, 32, and 33 at the deposition of Edith Sundby today. However, I am reserving all rights to use Exhibits 17, 32, and 33 in the remainder of the case and at trial." *Id.* at 54. Additionally, Mr. Slome reminded Plaintiff that the Court requires parties to participate in a telephonic discovery conference with the Court before motion practice on any discovery dispute is permitted. *Id.* Accordingly, Mr. Slome asked Plaintiff to confirm that he was available to speak to the undersigned that morning, and stated that he would contact the undersigned's law clerk to set a hearing. *Id.* Mr. Slome received no response.

Mr. Slome promptly contacted the Court to intervene. The Court set the issue for an immediate hearing on the docket (ECF No. 128) and began attempting to contact all parties

involved to ensure they knew of the hearing. However, as set forth in detail in the Court's Order to Show Cause and recounted by the undersigned's law clerks on the record during the show cause hearing, the Court was unable to contact Mr. Myrick, Plaintiff, or Mrs. Sundby, despite endeavoring to do so for over an hour by email and phone. *See* ECF No. 132 at 4-5; ECF No. 134 at 4-8. *See also* ECF No. 139, Ex. 14 (emails sent by chambers staff to Plaintiff, Mr. Myrick, and Mrs. Sundby on the morning of May 29, 2020 regarding the hearing). Although the hearing was initially set for 10:20 a.m., the Court eventually commenced the hearing at 11 a.m. with only Mr. Slome and Mr. Landau in attendance. Following the hearing, the Court immediately ordered both Plaintiff and Edith Sundby to appear for the deposition by noon. ECF Nos. 129, 130. As detailed in the Order to Show Cause, the Court then made every effort to inform Plaintiff, Mrs. Sundby, and Mr. Myrick of the order to appear, to no avail. *See* ECF No. 132 at 4-5. Mr. Slome excused the videographer and court reporter at 12:18 PM and requested a Certificate of Non-Appearance.

The Court's Order to Show Cause followed on June 1, 2020, directed to Plaintiff, Mr. Myrick, and Mrs. Sundby, and setting a show cause hearing for June 15, 2020. ECF No. 132. All persons to whom the order was directed were permitted to file a written response in advance of the show cause hearing no later than June 10, 2020. *Id.* at 9. Plaintiff filed a written response to the Order to Show Cause by the deadline ("written response"), but neither Mr. Myrick nor Mrs. Sundby filed a response. *See* ECF No. 139. In the written response, Plaintiff argued that the show cause hearing should not include Edith Sundby or Mr. Myrick, because "the required showing includes the very confidential information that Edith Sundby cannot be exposed to." ECF No. 139 at 2. Plaintiff also argued that showing the exhibits to Ms. Sundby during her deposition "would unnecessarily and unjustifiably ***cause her anguish, threaten her health, burden the marital relationship***." ECF No. 139 at 6 (emphasis in original). Plaintiff also filed a Motion to Modify the Court's Order to Show Cause (ECF No. 143) on June 12, 2020 on the same basis, asking the Court to strike its requirement that Edith Sundby and her counsel attend the show cause hearing, and

further asking that the Court strike certain language from its Order to Show Cause—namely, that Plaintiff contended the documents at issue were confidential, and stated his intention to move for a protective order "to ensure that they were not shown to Edith Sundby." *See* ECF No. 143; ECF No. 132 at 3. Plaintiff argued that the final portion of that sentence was "unnecessar[y]," and objected to the Court having sent the Order to Show Cause, which required her appearance, to Ms. Sundby,[2] "in essence alerting her: 'Mrs. Sundby, your husband is withholding confidential information from you.'" ECF No. 143 at 3.

Plaintiff also sought to continue the show cause hearing by approximately three months, a request that the undersigned denied. The denial was affirmed by the District Judge over Plaintiff's Rule 72(a) objection on the day of the show cause hearing. *See* ECF Nos. 140, 144, 146, 147. The show cause hearing proceeded as scheduled on June 15, 2020, with Plaintiff, Mr. Myrick, and Ms. Sundby in attendance. ECF No. 148. Without leave of Court, Plaintiff filed the anticipated Motion for Protective Order regarding the sensitive documents on the same day as the show cause hearing. ECF No. 145. The Court set an expedited briefing schedule on the Motion for Protective Order during the show cause hearing, and also rescheduled Edith Sundby's deposition for two alternative dates—June 24 or July 22, 2020—depending on whether Plaintiff intended to file an objection to the forthcoming ruling on the Motion for Protective Order. *See* ECF No. 149. The Court ultimately denied the Motion for Protective Order on June 23, 2020, and Plaintiff filed a notice of intent to object, triggering the later date for Edith Sundby's deposition. ECF Nos.

---

[2] At the time the Court issued the Order to Show Cause—and indeed, to date—Mr. Myrick had never entered an appearance in the case or otherwise filed anything on Mrs. Sundby's behalf, and the Court's understanding that he represented Mrs. Sundby was based solely on secondhand information from the parties. Mr. Myrick had also failed to respond to any of the Court's May 29, 2020 communications. Accordingly, absent confirmation that she was represented by counsel, the Court gave direct notice to Edith Sundby of the order requiring her appearance at the show cause hearing.

3:19-cv-00390-GPC-AHG

156, 157. The District Judge affirmed the denial of the protective order over Plaintiff's Rule 72(a) objection (ECF No. 177), and Defendants were thus allowed to use the sensitive documents during Edith Sundby's deposition on July 22, 2020.

On August 3, 2020, the Investor Defendants filed a Request for Further OSC Re Sanctions Seeking Monetary and Non-Monetary Sanctions Against Plaintiff in Response to Court's Prior Order to Show Cause ("Motion for Further Sanctions"). ECF No. 188. In the Motion for Further Sanctions, Investor Defendants report that Edith Sundby confirmed under oath during her deposition that she was, all along, aware of Plaintiff's medical issues mentioned in the deposition documents, despite Plaintiff's repeated arguments to the Court that Ms. Sundby was not aware of this information, and that disclosing the documents to her would cause her anguish, threaten her health, and burden the marriage relationship. *See, e.g.*, ECF No. 139 at 5-6. Investor Defendants identify at least six pleadings filed with the Court and one email that Plaintiff sent to the undersigned in which Plaintiff falsely stated that his wife was not aware of his medical issues discussed in the sensitive documents. ECF No. 188 at 4-5.

Investor Defendants contend the Court should issue further sanctions based on Plaintiff's false statements to the Court, including (1) monetary sanctions to satisfy the excess costs, expenses, and attorney fees reasonably incurred by Investor Defendants in unnecessarily responding to Plaintiff's false arguments in his Motion to File Under Seal (ECF No. 138) and Motion for Protective Order (ECF No. 145) that the documents at issue contained sensitive information of which his wife was unaware; and (2) non-monetary sanctions in the form of striking Plaintiff's claim for Declaratory Judgment under the Court's inherent power. ECF No. 188 at 6-7.

## II.   LEGAL STANDARDS

Fed. R. Civ. P. 37(b)(2)(A) provides sanctions for failure to obey a discovery order, as follows:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may

issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Additionally, Fed. R. Civ. P. 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

> Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted).

Rule 37 is not the only source of sanctions available to the Court. Under the Court's inherent power, the court may levy sanctions, including attorney fees, for "'willful disobedience of a court order'" or when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 776 (1980)). *See also* Civ.LR 83.1(a) ("Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the

inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions").

"The inherent powers of federal courts are those that are necessary to the exercise of all others. The most common utilization of inherent powers is a contempt sanction levied to protect the due and orderly administration of justice and maintain the authority and dignity of the court." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (internal quotations, citations, and alterations omitted).

The Court's "authority to impose sanctions under its inherent powers is broad, but not limitless." *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1132 (9th Cir. 2008). The Court's inherent power "is 'both broader and narrower than other means of imposing sanctions.' [] On the one hand, the inherent power 'extends to a full range of litigation abuses.' On the other, the litigant must have 'engaged in bad faith or willful disobedience of a court's order'" to levy sanctions including attorney's fees. *Fink*, 239 F.3d at 992 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991)). A "willful" violation of a court order "does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "Before awarding [attorney fee] sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith." *Primus*, 115 F.3d at 648 (internal quotations and citation omitted). An explicit finding of bad faith "is especially critical when the court uses its inherent powers to engage in fee-shifting." *Id.* (noting that a "court's inherent power to impose attorney's fees as a sanction [is limited] to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.").

A party "demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Primus*, 115 F.3d at 649 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). Thus, a party's interference with the opposing

party's ability to take third-party discovery under Rule 45 may justify the imposition of sanctions. *See Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012) (finding a "clear" and "sanctionable" violation of Rule 45 where a party's counsel interfered with third-party discovery by advising "the person commanded by the [Rule 45] subpoena . . . to ignore the subpoena's command."); *Fox Indus., Inc. v. Gurovich*, No. 03–5166, 2006 WL 2882580, at *1-2, *5-10 (E.D.N.Y. Oct. 6, 2006) (sanctioning defense counsel both for abuse of process and pursuant to the court's inherent authority, after counsel, instead of "immediately" moving to quash the plaintiff's Rule 45 subpoenas on nonparties as defense counsel stated he would do, instead wrote letters to the nonparties instructing them not to comply with the subpoenas; the court found the letters were "clear evidence" of counsel's "bad faith and vexatious behavior, evincing a deliberate effort to usurp the authority of the court.").

The Court's inherent authority to sanction willful conduct also includes "the authority to sanction the conduct of a ***nonparty*** who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses." *In re Avon Townhomes Venture*, 433 B.R. 269, 304 (Bankr. N.D. Cal. 2010), *aff'd*, No. BAP NC-11-1068-HDOD, 2012 WL 1068770 (B.A.P. 9th Cir. Mar. 29, 2012), *aff'd*, 575 F. App'x 715 (9th Cir. 2014) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1993)) (other citations omitted) (emphasis added). *See also Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices."). A non-party may also be held in contempt for "fail[ing] without adequate excuse to obey" a Rule 45 subpoena or the Court's orders relating to it. Fed. R. Civ. P. 45(g). *See also* 28 U.S.C. § 636(e)(6)(B)(iii).

Finally, the Court has statutory authority pursuant to 28 U.S.C. § 1927 to require anyone "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The imposition of sanctions under § 1927 requires a finding that

the person against whom the sanctions are imposed acted "recklessly or in bad faith[.]" *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (citation omitted). Notably, section 1927 sanctions may be imposed on a *pro se* party, not just attorneys. *Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990). Section 1927 sanctions may be appropriate where counsel or a party circumvents the proper procedure under Rule 45 to quash or limit the scope of a subpoena, if such circumvention of the procedure is done willfully or in bad faith to hinder discovery. *See Price*, 847 F. Supp. 2d at 795-96.

## III. DISCUSSION

During the show cause hearing, Mr. Myrick confirmed that he represented Edith Sundby, but stated that he was unaware that Plaintiff had agreed to accept service of the Investor Defendants' Rule 45 subpoena on Edith Sundby's behalf, and he did not know whether she had ever been served with the subpoena. Nevertheless, Mr. Myrick agreed that Edith Sundby did not object to the subpoena, and clarified that he did not take the position that she was not required to appear for her deposition as scheduled. However, Mr. Myrick explained that he and Edith Sundby failed to appear because he understood that there was or would be a pending motion for protective order on file, based on Plaintiff's email.

Mr. Myrick further stated that he did not recall receiving any emails on the morning of May 29, 2020, and that he had been without email service while working on his new home that day, which is why he did not respond to any phone calls or emails after sending the 9:16 a.m. email confirming that he had received Plaintiff's email purporting to suspend Mrs. Sundby's deposition.

For his part, Plaintiff explained that the notice of his own deposition on May 28, 2020 indicated there would be a realtime transcript available, but that there was none, and he needed the transcript for proof in support of his anticipated motion for protective order as well as to properly respond to the Order to Show Cause. Plaintiff contended that the transcript from his deposition would show that defense counsel refused to meet and confer regarding the use of the sensitive documents during Edith Sundby's deposition the next day, in contrast to Mr. Slome's position the following morning that he

agreed not to use the documents. Plaintiff insisted that the Court needed to compare the statements made by defense counsel during the deposition to those made to the Court the following morning to properly evaluate whether sanctions against Plaintiff were warranted. Absent the transcript, Plaintiff argued that he would have been deprived of his right to be fully heard had he engaged in the deposition dispute resolution process required by the Court or otherwise involved the Court before unilaterally declaring the deposition suspended under Rule 30(d)(3)(A). Additionally, and as Plaintiff also discussed in his written response, Plaintiff noted that Mr. Slome's agreement not to use the documents was not joined by Marquee's counsel Mr. Landau, nor did it extend to Exhibit 118, the Morgan Stanley letter attached to Exhibit 17 (Plaintiff's April 2017 email to R.J. Solovy). Thus, any such agreement made on the morning of May 29 was not sufficient to quell his concerns about Edith Sundby seeing the sensitive documents.

In addition to the written response to the Court's Order to Show Cause that Plaintiff filed by the deadline of June 10, 2020 (ECF No. 139), Plaintiff also filed a supplemental response to the Order to Show Cause after the hearing on June 21, 2020 ("supplemental response"), once he had access to the transcript from his deposition. ECF No. 155.

The Court has considered the testimony from the hearing and all papers submitted to the Court on the issue of sanctions. For the reasons that follow, the Court **SANCTIONS** Plaintiff pursuant to the inherent authority of the Court, **QUASHES** the Order to Show Cause against Edith Sundby and her counsel Russel Myrick, and **DENIES** the Investor Defendants' Motion for Further Sanctions due to their failure to establish the fees and costs incurred as a result of the unnecessary briefing on Plaintiff's Motion for Protective Order and Motion to File Documents Under Seal.

## A. <u>Sanctions Against Plaintiff</u>

The Court first finds that sanctions are warranted against Plaintiff pursuant to the Court's inherent authority. Plaintiff willfully interfered with the discovery process by causing the suspension of Edith Sundby's deposition and vexatiously multiplied the proceedings. Worse, he did so on the apparently false premise that showing the sensitive

documents to his wife during her deposition would reveal a medical condition that she was unaware of, and that revelation would cause great harm.

Plaintiff had no legitimate basis to demand the suspension of his wife's deposition. As discussed above, despite the subject line of Plaintiff's May 29 email referring to a "Motion for Protective Order" and Mr. Myrick's reference to "the motion" in his response, Plaintiff had not moved for a protective order, nor could he have done so without first seeking leave of Court pursuant to the undersigned's chambers rules. Indeed, Plaintiff did not file a motion for protective order regarding the documents at issue until more than two weeks later, on June 15, 2020. ECF No. 145. Although Plaintiff made clear in the body of his email that he intended to move for a protective order "promptly," Plaintiff did not file a notice with the Court of his intent to file such a motion or otherwise contact the Court regarding the dispute at all, in contravention of the undersigned's chambers rules.[3]

The full text of Rule 30(d)(3)(A), the provision cited by Plaintiff in his email, permits a deponent or a party to "[a]t any time during a deposition" to "***move*** to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. ***The motion may be filed*** in the court where the action is pending or the deposition is being taken." (emphasis added). If the objecting party demands that the deposition be suspended while the Court considers the motion, the deposition must be suspended "for the time necessary to obtain an order"

---

[3] The undersigned's chambers rules dictate that if a dispute arises during a deposition, the parties must meet and confer before contacting chambers to seek an immediate ruling from the Court. If the Court is not immediately available, the parties must proceed with the deposition in other areas of inquiry until the Court is able to respond. No discovery motion may be filed until the Court has conducted the pre-motion telephonic conference on the dispute, unless the movant has obtained leave of Court. *See* Chmbr. R. at 3, *available at* https://www.casd.uscourts.gov/judges/goddard/docs/Goddard%20Civil%20Pretrial%20Procedures.pdf. Plaintiff is well aware of the undersigned's chambers rules, as he had previously participated in the required pre-motion telephonic conferences.

from the Court. The subsequent provision states that the Court, in addressing the motion, *may order* that the deposition be terminated or limit its scope and manner as provided in Rule 26(c). Fed. R. Civ. P. 30(d)(3)(B) (emphasis added). Moreover, Rule 30(c)(2) provides that an objection to evidence at a deposition "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2).

Not only did Plaintiff fail to file a motion for protective order; he also did not file a motion under Rule 45(d)(3)(B) seeking to quash or modify the properly served subpoena. Therefore, no valid grounds existed for Edith Sundby to fail to obey the Rule 45 subpoena, or for Plaintiff to instruct her not to appear.

In his written response to the Court's Order to Show Cause, Plaintiff not only concedes that his actions were willful, but he also doubles down on his willfulness, by insisting that defiance of the Court's rules was necessary because he believed the Court would likely rule against him. Plaintiff argues that, when addressing past discovery disputes, the Court has not allowed him an opportunity to be fully heard, pointing to the Court's April 20, 2020 hearing as an example and contending that it "was more 'telling' than hearing." ECF No. 139 at 10. Therefore, Plaintiff argues, "[w]ith the personal stakes so great regarding the immediate issue" of the sensitive deposition exhibits, "just as Plaintiff could not afford even the possibility of surprise by defense counsel in Edith Sundby's deposition, Plaintiff could not afford even the possibility of a surprise by the Court, should it not order both Mr. Slome and Mr. Landau not to use the Sensitive Exhibits in Edith Sundby's deposition, or that there would be no full record available for review." *Id.* at 10-11 (emphasis omitted).

Plaintiff makes a similar argument in his unauthorized and untimely supplemental response to the Order to Show Cause, filed on June 21, 2020:

Judge Goddard's Chambers Procedures includes:

No discovery motion may be filed until the Court has conducted its pre-motion telephonic conference, unless the movant has obtained leave of Court. The

Court may strike any discovery motion that is filed without complying with this process.

As such, Plaintiff had three choices; (1) participate in a pre-motion telephonic conference, (2) seek leave to file a discovery motion, or (3) file a discovery motion that risked the Court striking it.

Option 1 - Telephonic Conference. A telephonic conference would conclude with an order of some type, but only of the telephonic conference itself. There would be no immediately available review of a motion, with arguments and evidence, that had not yet been filed. ***This meant that, if Judge Goddard disagreed with Plaintiff's position, the deposition might have continued,*** and defense counsel would be free to show Edith Sundby the sensitive words or sensitive exhibits, which in effect would have denied Plaintiff his right to file the motion for a protective order; a bell that could not be unrung.

Option 2 – Seek Leave to File the Motion for Protective Order. A request seeking leave to file a motion would only involve additional delay.

Option 3 – File a Motion for Protective Order. Even if the Court decided to strike the motion, the order striking it would be reviewable, and the motion's arguments and evidence would be on record for the review.

ECF No. 155 at 3-4 (emphasis added; Plaintiff's emphasis omitted).

Plaintiff lays bare that he continues to believe that his willful circumvention of the Court's procedures to avoid an unfavorable outcome was the only "rational" choice and is therefore justified. *See id.* at 4-5 ("Betting something so important on . . . what the Court may or may not do (when there was no way to know, and prior decisions made the risk clear), guessing wrong (an order allowing the disclosure before the motion [for protective order] could be filed) would be unforgivable . . . making it an irrational choice. Choosing rational over irrational should be an adequate show of cause.").

There could be no clearer illustration of willful conduct by a litigant than Plaintiff's own description of his rationale in ignoring the Court's discovery dispute rules because he thinks they will result in a ruling against him. "Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious

3:19-cv-00390-GPC-AHG

dispute-settlement mechanism." *G–K Props. v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978).

Plaintiff's arguments in his responses serve only to compound his bad faith and willful conduct. First, Plaintiff fails to note that the undersigned's chambers rules also instruct parties in the midst of a deposition dispute to "proceed with the deposition in other areas of inquiry" if the dispute cannot be immediately reviewed by the Court. Second, it is unclear which of the three options Plaintiff outlines that he believes he pursued. While Plaintiff did in fact eventually file a motion for protective order without leave of Court, as outlined in "Option 3," he did not do so at the time he invoked Rule 30(d)(3)(A) as a basis for demanding the suspension of his wife's deposition on May 29. Rather, Plaintiff sent an email to opposing counsel that he was demanding the deposition be suspended because he **intended** to file such a motion, did not bring the issue before the Court, informed his wife that the deposition had been suspended, and purportedly went to sleep for several hours so that he could not respond to the Court's multiple messages to him. *See* ECF No. 139 at 63 ("Mr. Myrick asked if he should inform Edith. I told him that I was on my way to get some much needed sleep, and would do it. Having just finished getting ready for her deposition, Edith was not happy to learn of the suspension, especially in the absence of me being able to offer any sensible explanation."). Third, Plaintiff does not explain how seeking leave to file a motion for protective order on the morning of his wife's deposition would have caused "additional delay" beyond the delay he created by causing his wife to fail to appear for her deposition by falsely telling her it had been suspended, immediately and purposefully making himself unavailable for a hearing on the issue, and then filing the motion over two weeks later **without** seeking leave of Court.

Fourth, Plaintiff wrongly presumes that complying with the Court's requirement of a telephonic conference would have resulted in an immediate ruling, without the opportunity for motion practice or even Court review of the disputed documents at issue. By acting unilaterally instead of respecting the Court's process, Plaintiff deprived the Court of the opportunity to order the most reasonable and efficient solution that would have

preserved his privacy concerns: proceeding with the deposition as scheduled, without questioning on the sensitive documents, subject to reopening if the Court denied the anticipated motion for protective order. Indeed, that is the default solution set forth in the undersigned's chambers rules. It should go without saying that fearing an adverse ruling from the Court is simply not a legitimate basis to willfully act in opposition to the Court's authority to address—and rule on—discovery disputes.

Plaintiff's argument that he did not see any of the Court's communications after sending his email does not change this analysis. In his written response, Plaintiff contends that, "<u>immediately</u> after sending the Suspension Email, Plaintiff put his computer into sleep mode, put his mobile phone into airplane mode, informed Edith Sundby that her deposition was suspended, and went to bed." ECF No. 139 at 11. However, the willful conduct at issue preceded the Court's efforts to contact Plaintiff for a hearing on the dispute. Plaintiff's conscious decision to ignore the Court's rules for raising the dispute in the first place, coupled with his direct interference with a third-party Rule 45 subpoena requiring his wife to appear for her deposition, constitutes sanctionable conduct whether or not Plaintiff's subsequent choice to make himself immediately unavailable after sending the email could be viewed as innocent.

Plaintiff's argument that he needed the deposition transcript before he could be fully heard on his anticipated motion for protective order also misses the point. Plaintiff is simply not entitled to decide on his own that the procedures in place under the Court's rules and the Federal Rules of Civil Procedure can be ignored where he believes they would prevent him from being able to make the most robust possible argument in his favor. Even if the deposition transcript demonstrated that Mr. Slome had lied to the Court by reporting that he did not intend to use the disputed documents during Edith Sundby's deposition, that he had informed Plaintiff of the same, and that they "left it at the end of the day" that the

parties would "get together and discuss this today, before the deposition in the morning,"[4] Plaintiff was simply not entitled to defense counsel's agreement not to use the documents or to only use redacted versions of the documents, three of which Plaintiff himself had produced during discovery. And, as Plaintiff himself outlines as one of the options available to him under the Court's rules, Plaintiff could have sought leave of the Court to file a motion for protective order concerning the documents and asked that any questioning of Edith Sundby regarding those documents be prohibited until the briefing was complete and the motion decided, while still allowing the deposition to move forward in other areas of inquiry.

Again, by Plaintiff's own telling of the events of May 29, 2020, Plaintiff's choice to cause Ms. Sundby to fail to appear for her Rule 45 deposition was done willfully and in

---

[4] The five pages of deposition transcript that Plaintiff ultimately filed with the Court as attachments to his supplemental response proved no such thing. *See* ECF No. 155, Exs. 1-4. Rather, it showed that at the close of Plaintiff's deposition, Mr. Slome stated on the record that "I told Mr. Sundby during the break that my proposal is, is that I will agree to not use Exhibit 17, 32, and 33 at the deposition of Edith Sundby tomorrow until and unless one of two things happen: Number one, we either get an agreement between counsel before the deposition commences, which is 10:00 a.m. on May 29, or after it commences, or to the extent that counsel and the plaintiff can't reach an agreement for the deposition, that we call Judge Goddard and raise this issue with Judge Goddard. However, under no circumstances am I in agreement at all or any threat that Mr. Sundby made that somehow he's going to file a motion for a protective order and seek to cancel the deposition tomorrow." ECF No. 155 at 14-15, D. Sundby Dep. 339:18-340:7. In response, Plaintiff stated, "[W]hat you just said is not true. I never anywhere in the record or off the record said that I intended to cancel anything. I only made the statement about seeking the protective order. That cancellation never even c[a]me up in my mind. You've just now brought it up, I guess. . . . I've been very specific about the exact words [I want redacted]; said it multiple times. It's very reasonable. They have nothing to do with the case; only to do with the health-related concern I have with regards of noticing Edith and alarming Edith. And so I thought you were going to give me an answer. You're not going to give me an answer." *Id.* 340:9-23. Tellingly, in his supplemental response, Plaintiff simply inserted "[not]" before "agree" in Mr. Slome's statement that he "will agree to not use Exhibit 17, 32, and 33 at the deposition of Edith Sundby tomorrow[.]" ECF No. 155 at 2.

bad faith to hinder discovery because he did not want her to see the disputed documents, and because he feared that he would not have the power to prevent her from seeing them if he allowed the Court to participate in the decision. Therefore, fee-shifting sanctions are warranted under both the Court's inherent authority and Section 1927 due to Plaintiff's vexatious multiplying of the proceedings and bad faith conduct, evidenced by his choice to delay the litigation and hamper enforcement of the Rule 45 subpoena. *Primus*, 115 F.3d at 649; *Hutto*, 437 U.S. at 689 n.14 (1978). *See also Price*, 847 F. Supp. 2d at 795-96 (finding a "clear" and "sanctionable" violation of Rule 45 where a party's counsel interfered with third-party discovery by advising "the person commanded by the [Rule 45] subpoena . . . to ignore the subpoena's command").

Accordingly, the Court **SANCTIONS** Plaintiff by requiring him to pay **$1,790.00** to reimburse Investor Defendants for unnecessary attorney fees and costs, based on the Declaration filed by Mr. Slome outlining the expenses incurred as a result of the thwarted deposition of Edith Sundby. ECF No. 136. Specifically, Mr. Slome provides the following breakdown of fees and costs incurred, based on his hourly billing rate of $300.00 per hour:

A. 3.10 hours for drafting the deposition outline and preparing the exhibits for Mrs. Sundby's deposition: $930

B. .7 hours for drafting meet and confer emails to Plaintiff and Mr. Myrick regarding the deposition: $210

C. 3.3 hours for attending the deposition and participating in the telephonic hearing with the Court on the morning of May 29, 2020: $990

D. Court reporter fees: $240

E. Videographer fees $560

TOTAL: $2,930.00

The Court **GRANTS** reimbursement of the $990 in attorney fees incurred by Investor Defendants in connection with Mr. Slome's attendance at the deposition and participation in the May 29th hearing. Additionally, the Court **GRANTS** reimbursement of the wasted court reporter and videographer fees totaling $800. However, the Court

**DENIES** reimbursement for the fees incurred by Mr. Slome in drafting the deposition outline, preparing the exhibits, and drafting meet and confer emails to Plaintiff and Mr. Myrick regarding Mrs. Sundby's deposition. The Court finds these costs were not unnecessary or wasted given that Mrs. Sundby's deposition ultimately went forward on July 22, 2020. Accordingly, Plaintiff is **ORDERED** to pay sanctions to the Investor Defendants in the amount of **$1,790.00**.

### B. Investor Defendants' request for non-monetary sanctions in the form of striking Plaintiff's claim for declaratory judgment

In the Motion for Further Sanctions (ECF No. 188), Investor Defendants seek both non-monetary and monetary sanctions in light of the revelation during Edith Sundby's deposition that she knew about Plaintiff's medical condition discussed in the disputed deposition documents all along. Specifically, Investor Defendants provided a deposition transcript showing that Edith Sundby was not at all surprised by the information contained in the sensitive documents. Mr. Slome first asked Ms. Sundby to read one of the sensitive documents, an email from Plaintiff where he states: "I will share some very personal information for your eyes only. No one, even Edie, is aware of recent developments." ECF No. 188 at 15, E. Sundby Dep. 221:8-18. Mr. Slome then asked Ms. Sundby to read the last paragraph of an attachment to the email, a letter in which which Plaintiff states in relevant part, "I am flying to New York this weekend to have dinner with my daughter on her birthday. Leaving Tuesday for Mayo Clinic." *See id.* 221:19-222:8. This exchange followed:

> Q. Okay. Are you aware of Mr. Sundby having visited the Mayo Clinic in 2017?
> A. I am aware that Dale has had some issues. . . . I don't recall specifically [in] April of 2017, visiting the Mayo Clinic. I don't recall specifically.
> Q. Okay. So—but you are aware that Mr. Sundby had health issues in 2017?
> A. Yes.
> Q. Okay. Were those a serious illness?
> A. Well, yes, I think quite – quite – quite serious.

> Q.  Was it a fatal illness?
> A.  I think that there was a diagnostic concern. I cannot tell you specifically what it was. You'd have to get all of [the] specifics from Dale.
> Q.  And when did you become aware of this information?
> A.  That Dale had some serious issues, health issues?
> Q.  Yes.
> A.  I'm thinking 2017. I'm not—I cannot recall specifically.

*Id.* 222:11-223:9. Defense counsel then directed Mrs. Sundby's attention back to the email, and specifically the portion where Plaintiff states "if [I] succumb in the intervening period, an irrevocable trust holds a $6m life policy (used to be $21m)" including a trust provision that the trustee would pay off the full balance of the mortgage or other indebtedness of the settlor at the time of his death. *See id.* 224:17-20 (quoting ECF No. 139 at 36). In response to reading this portion of the email, Edith Sundby merely commented "Yes. . . . Dale had an insurance policy. I had an insurance policy, yes." E. Sundby Dep. 224:21-22. When pressed further about whether she was aware of Plaintiff's medical conditions in 2017, she confirmed, "I was aware that there were medical issues, yes." *Id.* 224:25-225:1.

As for the letter attached to the email , Mr. Slome asked Mrs. Sundby to confirm that ". . . learning this information in the letter, in reviewing it regarding Mr. Sundby talking about succumbing to an illness, and that he's going to the Mayo Clinic, does not come as a surprise to you?" *Id.* 226:5-9. Mrs. Sundby responded: "No." *Id.* 226:10.

This deposition testimony is salient because the language from the sensitive documents discussed during these exchanges are the exact portions of the exhibits that Plaintiff insisted ***must*** be redacted from the exhibits before they could be shown to his wife. In Plaintiff's Motion for Protective Order, he specifically requested the redaction of these precise "sensitive words" on the basis that they would "create awareness and alarm" on the part of his wife. *See* ECF No. 145 at 2-3 (moving to redact from the April 2017 email the phrase "RJ, I will share some very personal information (your eyes only; Jeff is ok too if helpful) . . . no one, even Edie, is aware of this very recent development (she does not need

3:19-cv-00390-GPC-AHG

the added stress)" and moving to redact "Mayo Clinic" from the attached letter).

It is clear from Edith Sundby's testimony that she was not in the dark about the fact that Plaintiff suffered from serious health issues in 2017, and that nothing in the supposedly sensitive documents came as a surprise to her, even if she could not recall specifics. This calls into serious question Plaintiff's repeated representations to the Court that he never told his wife about any of his health issues, and that learning of them during the deposition would cause great harm. *See, e.g.*, ECF No. 139 at 5-6 ("When Plaintiff encountered his own health challenges, he knew that any knowledge of it would only cause Edith Sundby serious and ongoing distress. So he decided that any personal health battles needed to be kept strictly private. Beyond Plaintiff's clear right to privacy, showing Edith Sundby the subject exhibits, without redacting, or framing any question in a manner that the same personal information might be revealed, would unnecessarily and unjustifiably ***cause her anguish, threaten her health, and burden the marriage relationship***.") (emphasis in original). *See also* ECF No. 188 at 4-5 (collecting examples of Plaintiff's various representations to the Court that Edith Sundby was never and was still not aware of the medical issues discussed in the April 2017 email or any of the personal medical information contained in the disputed exhibits).

It appears, then, that Plaintiff's proffered reason for unilaterally suspending Edith Sundby's deposition, moving to file documents under seal, moving for a protective order, attempting to delay the show cause hearing, moving to exclude Edith Sundby and her counsel from appearing at the show cause hearing, forcing opposing counsel to engage in motion practice on all of these issues, and requiring the Court—both the magistrate judge and the district judge—to expend time and resources on reviewing and ruling on the related motions, was concocted. The Investor Defendants seek further sanctions in light of this revelation.

The harshest sanctions available under Rule 37 are dismissal and default. *See In re Rubin*, 769 F.2d 611, 617 (9th Cir. 1985). "Dismissal is encouraged when the counsel or party, willfully or in bad faith, fails to comply with the 'rules of discovery or court orders

enforcing the rules, or in flagrant disregard of those rules or orders.'" *WRB, Inc. v. Vision Mktg.*, LLC, No. 2:16-CV-436-RMP, 2018 WL 3259754, at *2 (E.D. Wash. Feb. 23, 2018) (quoting *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981)). *See also Wanderer v. Johnston*, 910 F.2d 652, 655–56 (9th Cir. 1990) (explaining that courts are afforded "considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties") (citing *National Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

To impose such an extreme sanction, in addition to finding that a party acted willfully or in bad faith, the Court must consider the following five factors: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its dockets, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Wanderer*, 910 F.2d at 656.

Investor Defendants' motion to strike one of Plaintiff's claims from the operative complaint would amount to partial dismissal of the action, and is therefore subject to the same standard as a dismissal sanction. *See R & R Sails, Inc. v. Ins. Co. of Penn*, 673 F.3d 1240, 1247 (9th Cir. 2012) (explaining that where a "sanction amount[s] to dismissal of a claim," the court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions.") (internal citations omitted).[5]

---

[5] Additionally, such a sanction would be dispositive and thus cannot be ordered directly by a magistrate judge, although the undersigned could recommend such a sanction be imposed by the District Judge. *See, e.g.*, *United States v. Rivera-Guerrero,* 377 F.3d 1064, 1068 (9th Cir. 2004) (explaining that the district court "must look to the effect of the motion" in determining whether it is properly characterized as dispositive or non-dispositive of a claim, and thus outside of the magistrate judge's authority to grant under 28 U.S.C. § 636(b)); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988) (finding that a discovery sanction striking some of a plaintiff's claims was dispositive because it "ha[d] the effect of dismissing [the plaintiff's] action").

Here, although the Court has indeed found that Plaintiff acted willfully and in bad faith, the relevant factors weigh heavily against recommending the drastic sanction requested of striking Plaintiff's claim for declaratory judgment. The District Judge has already issued a ruling on Plaintiff's declaratory judgment claim on its merits, as favored by public policy. *See* ECF No. 209 at 41-53. Because the Court's summary judgment ruling has already issued, the factors of the public's interest in expeditious resolution of litigation and the court's need to manage its dockets are also not implicated here. But even if the Court had not yet issued a ruling on that claim, the undersigned would not recommend it be stricken. Plaintiff's Declaratory Judgment claim was the crux of his case. The prejudice to Plaintiff if it were stricken would be enormous, and would far outweigh the harm caused to Defendants by Plaintiff's misrepresentations regarding whether Ms. Sundby knew of his medical issues in 2017, and his related willful conduct causing the delay of her deposition by approximately two months. Most importantly, there are numerous lesser sanctions available that are more appropriately tailored to the misconduct at hand. The only harm identified by Investor Defendants in their Motion for Further Sanctions is that they "were forced to incur the unnecessary legal fees and costs in responding to the Plaintiff's false argument in the Motion to File Under Seal and the Motion for Protective Order." ECF No. 188 at 5 (citations omitted).

Perhaps recognizing that the harsh dismissal sanction requested would not be granted pursuant to Rule 37, Investor Defendants instead argue in their Motion for Further Sanctions that the Court should strike the claim under its inherent power. ECF No. 188 at 6 (citing M*onsanto Co. v. E.I. Du Pont de Nemours & Co.*, 748 F.3d 1189, 1200-01 (Fed. Cir. 2014)). The Court finds *Monsanto* inapposite. There, the lower court had stricken certain of the defendant's counterclaims specifically because the defendant "repeatedly misrepresented its subjective belief in order to support" the counterclaims, "which

prolonged the already-protracted proceedings and caused unnecessary expense to [the plaintiff] and needless effort by the court." *Id.* at 1200 (internal quotations and alteration omitted). Therefore, the decision to strike portions of the defendant's second amended answer and counterclaims was directly related to the vexatious and abusive conduct at issue—namely, making "repeated misrepresentations" about the basis of its amended counterclaims when seeking leave to file them, which "compromised the integrity of the case[.]" *Id.* at 1200-01. Consequently, the *Monsanto* court concluded that "the district court properly exercised its discretion in imposing targeted sanctions ***by carefully fitting its sanctions to the conduct that it found to be improper.***" *Id.* at 1202 (emphasis added).

Here, Plaintiff's misrepresentations regarding whether his wife knew about the medical issues discussed in the sensitive documents are, at best, only tangentially related to his claim for declaratory judgment that the altered deeds and notes underlying this litigation are void, because her knowledge was arguably relevant to Defendants' equitable unclean hands defense. However, Investor Defendants were ultimately able to depose Edith Sundby regarding the documents and her knowledge of the content discussed therein, and, despite being granted leave to do so, chose not to supplement their summary judgment motion based on the testimony elicited from Ms. Sundby regarding the documents. Accordingly, the requested sanction of striking the declaratory judgment claim is not narrowly tailored to the misconduct identified. A more appropriately tailored and less drastic sanction is available: requiring Plaintiff to pay for the unnecessary costs incurred by Defendants in briefing Plaintiff's frivolous motions premised on his wife's lack of knowledge. The Court turns to those sanctions now.

### C. <u>Investor Defendants' request for monetary sanctions</u>

The Court finds that the additional evidence provided by Investor Defendants in the Motion for Further Sanctions (ECF No. 188) bolsters its existing finding that Plaintiff has unreasonably and vexatiously multiplied the proceedings in this action by delaying Edith Sundby's deposition without reason and in bad faith. This finding justifies the exercise of the Court's statutory authority pursuant to 28 U.S.C. § 1927 to require anyone "who so

multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

However, the Court has already issued fee-shifting sanctions against Plaintiff for his conduct related to the suspension of Edith Sundby's May 29th deposition. Although the Court agrees with the Investor Defendants that the Court would be warranted in ordering Plaintiff to pay the further sanctions of the unnecessary fees and costs incurred by Investor Defendants in opposing Plaintiff's baseless Motion for Protective Order and Motion to File Documents Under Seal, the Investor Defendants fail to support this request with adequate information to order such sanctions. Nowhere in the Investor Defendants' motion or in the attachments are these fees and costs outlined. Nor does the Court think it necessary to require additional motion practice on this issue simply to justify imposing such sanctions. Consequently, under the circumstances, the Court **DENIES** the Motion for Further Sanctions (ECF No. 188).

### D. Sanctions against Edith Sundby and Russel Myrick are not warranted

In his written response to the Order to Show Cause, Plaintiff argues that "Edith Sundby is at most guilty of trusting her husband of 44 years." ECF No. 139 at 15. The Court agrees. There is no evidence establishing that Ms. Sundby willfully disobeyed the Rule 45 subpoena or the Court's minute order requiring her to appear for her deposition. Although Defendants could have moved for her joinder, Ms. Sundby is a non-party to this case and does not receive direct notices of filings on the docket. Therefore, her lack of notice of the order is understandable and her failure to comply was not clearly in bad faith. Further, Plaintiff admits that he is at fault for wrongly informing her that her deposition was suspended as an automatic result of his email demanding its suspension, and further admits that he did not provide her any explanation. Ms. Sundby's counsel, Mr. Myrick, was also of no help to her on the day of her deposition, simply taking Plaintiff's word that his email was sufficient to suspend Ms. Sundby's deposition without any notice to, or involvement of, the Court, despite the fact that her deposition was compelled by a Rule 45

subpoena issued by the Court, and despite the fact that the plain text of the rule on which Plaintiff relied anticipates suspension of a deposition only upon *motion* of a party "filed in the court where the action is pending or the deposition is being taken." Fed. R. Civ. P. 30(d)(3)(A). Additionally, Plaintiff contends that his wife was frustrated and disappointed by the sudden suspension of her deposition. Ms. Sundby's mistake in trusting her attorney and her husband cannot be considered willful or otherwise sanctionable conduct.

Mr. Myrick's conduct is a closer call. Although Mr. Myrick represented to the Court that he relied on Plaintiff—who, unlike Mr. Myrick, is not an attorney—in deciding that Plaintiff's email demand was a legitimate way of suspending the deposition of Mr. Myrick's client, in an email to Mr. Myrick sent at 10:33 AM on May 29, 2020, court staff specifically addressed and corrected any misconception that Mr. Myrick may have had that Plaintiff had actually filed a motion for protective order or obtained a court order terminating Edith Sundby's deposition, explaining that no such motion had been filed and there was "no court order permitting a stay or abeyance of the deposition that was scheduled to begin at 10 AM." The email instructed Mr. Myrick to immediately call in to the hearing if he wished to move to stay the deposition on Edith Sundby's behalf, and further warned that Rule 45(g) may apply if Edith Sundby failed to appear for her deposition without adequate excuse. Mr. Myrick did not respond or otherwise appear for the hearing or deposition.

The Court is skeptical of Mr. Myrick's representations that he simply did not see any of the numerous email communications from opposing counsel or the Court that followed rapidly on the heels of Mr. Myrick's last email communication sent from his iPhone at 9:16 a.m. Mr. Slome's email stating that he was contacting the Court to intervene was sent only three minutes later. Nonetheless, despite the Court's misgivings about the truthfulness of Mr. Myrick's representations, there is not sufficient evidence to make a finding that Mr. Myrick acted willfully or bad faith, rather than merely exercising extremely poor judgment as an attorney by trusting a non-attorney to properly report whether Mr. Myrick's client remained under a Court-ordered obligation or not. And like Ms. Sundby, Mr. Myrick

does not receive direct notice of court filings. Moreover, based on the evidence presented to the Court, Mr. Myrick's conduct did not directly cause Ms. Sundby's failure to appear for her deposition. Instead, both Mr. Myrick and Plaintiff are consistent in reporting that Plaintiff was the driving force behind both Mr. Myrick's and Ms. Sundby's failures to appear, due to Plaintiff's incorrect reading of Rule 30(d)(3)(A) and his willful disregard of the Court's chambers rules.

Accordingly, the Court will not impose sanctions against either Ms. Sundby or Mr. Myrick and **QUASHES** the Order to Show Cause against both of them.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

(1) Plaintiff is **ORDERED** to pay fee-shifting sanctions to the Investor Defendants in the amount of $**1,790.00** due to his willful and bad-faith conduct in causing the suspension of Edith Sundby's deposition;

(2) The Court's Order to Show Cause (ECF No. 132) directed to Edith Sundby and Russel Myrick is hereby **QUASHED**;

(3) Plaintiff's Motion to Modify the Order to Show Cause (ECF No. 143) is **DENIED as moot**; and

(4) Investor Defendants' Motion for Further Sanctions (ECF No. 188) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  September 24, 2020

_Alison H. Goddard_

Honorable Allison H. Goddard
United States Magistrate Judge